UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRKO DJURDJEVICH, *individually and on behalf of others similarly situated*, | Docket No.  17-cv-00261 |
| *Plaintiff,* | **COMPLAINT** |
| vs. | **ECF CASE** |
| FLAT RATE MOVERS, LTD., SAM GHOLAM, ISRAEL CARMEL and JOHN DOES 1-10, | **Collective Action under 29 U.S.C § 216(b)** |
| *Defendants.* | |

Plaintiff Mirko Djurdjevich, as and for his complaint against Defendants Flat Rate Movers, Ltd., Sam Gholam, Israel Carmel and John Does #1-10, alleges as follows, on behalf of himself and on behalf of all other persons similarly situated:

**INTRODUCTION**

1.        Defendants are repeat offenders of federal and state wage and hour laws.  Prior to the events giving rise to the claims alleged herein, Defendants, a nationwide moving company, employed Plaintiff and other employees in their moving business.  But Defendants were underpaying their employees, and the New York State Attorney General took notice. Around 2009, Defendants came under investigation by the Attorney General for minimum wage and overtime violations, and in 2010 Flat Rate agreed to pay a settlement amount of $1.2 million for failure to pay overtime, failure to keep records of employees' hours, and unlawfully deducting pay from employees' wages "for a wide range of items, including uniforms, parking tickets and damage to moving trucks."[1]

---

[1] https://ag.ny.gov/press-release/ag-schneiderman-announces-distribution-over-2-million-restitution-400-cheated-workers

2.      So, in the summer of 2010, in response to the Attorney General's investigation, and in an attempt to circumvent the very laws over which they were being fined, Defendants devised a fraudulent scheme to pay Plaintiff and others as "independent contractors."  In July 2010, Defendants encouraged Plaintiff, an elderly immigrant from eastern Europe, to form a corporation to provide moving services to Flat Rate, told Plaintiff that he would make far more money "running his own business," and executed with Plaintiff's new corporation a "General Moving Subcontractor and Truck Lease Agreement."  But the "General Moving Subcontractor and Truck Lease Agreement" (the "Subcontractor Agreement") was just Defendants' cynical gambit to deceive Plaintiff and to deprive him of his rights to fair wages.

3.      Indeed, as a practical matter, the nature of the working relationship between Plaintiff and Defendants did not change under this new "independent contractor" scheme. Defendants continued to maintain complete control over Plaintiff's services – dictating his schedule, requiring Plaintiff to purchase and wear the Flat Rate uniform at all times, prohibiting Plaintiff from working for any other moving company, requiring Plaintiff to rent Flat Rate's trucks, and dictating how much Plaintiff's crew of truck workers were paid from the fee Plaintiff received.  After 18 months of this arrangement, Defendants terminated Plaintiff's services around October 2011.

4.      Around September 2012, as a result of Defendants' mischaracterization of their working relationship with Plaintiff, the New York State Department of Labor made an initial determination that Plaintiff had been an "independent contractor" to Flat Rate, and held Plaintiff's corporation liable for unemployment insurance contributions for the truck workers who worked with Plaintiff under the independent contractor arrangement.

5.      After evidentiary hearings before the Department of Labor, on March 16, 2016,

Administrative Law Judge Garfield Willis of the New York Department of Labor's
Unemployment Insurance Appeal Board overturned the Department of Labor's September 2012
initial determination, decided that Flat Rate had in fact been Plaintiff's employer from July 2010
to October 2011, and decided that Plaintiff's corporation was not, in fact, liable for
unemployment contributions for the truck workers.  Administrative Law Judge Willis saw
through Defendants' scheme, and the Department of Labor held, for the first time, on March 16,
2016 that "[t]he credible evidence establishes that [Flat Rate] exercised sufficient supervision,
direction and control over [Plaintiff] and other workers of [Plaintiff's corporation] to establish an
employer/employee relationship."

6.      Flat Rate appealed ALJ Willis' March 16, 2016 decision to the appellate level
of the Department of Labor Appeal Board.  Flat Rate's appeal of ALJ Willis's decision is still
under submission and has yet to be decided as of the filing of this complaint.

7.      From the inception of the so called "independent contractor" relationship,
Defendants have sought to deceive Plaintiff and other similar workers, to lead them to believe
they had no rights under federal and state wage and hour laws.  Indeed to this very day,
Defendants seek through administrative appeals to conceal the illegality of their policy of
systematically characterizing Plaintiff and others as independent contractors, which policy
Defendants perpetrated to skirt the law and to foist the costs of their operation on vulnerable
individuals and keep the benefits only for themselves.

8.      Accordingly, Plaintiff alleges on behalf of himself and on behalf of other
similarly situated current and former employees of Defendants Flat Rate Movers, Ltd. ("Flat
Rate"), Sam Gholam ("Gholam"), Israel Carmel ("Carmel") and John Does #1-10 (together with
Flat Rate, Gholam and Carmel, "Defendants"), who elect to opt into this action pursuant to the

FLSA, 29 U.S.C. § 216(b), that they are entitled to: (i) compensation for wages paid at less than the statutory minimum wage, (ii) unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay as required by law, and (iii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because Defendant's violations lacked a good faith basis.

9.      Plaintiff further complains that he is entitled to (i) compensation for wages paid at less than the statutory minimum wage, (ii) back wages for overtime work for which Defendants willfully failed to pay overtime premium pay as required by the New York Labor Law §§ 650 et seq. and the supporting New York State Department of Labor regulations, (iii) compensation for Defendants' violations of the "spread of hours" requirements of New York Labor Law, (iv) compensation for Defendants' violation of the Wage Theft Prevention Act, (v) compensation for unlawful deductions from Plaintiff's wages including consisting of Defendants' failure to reimburse them for their "tools of the trade," and (vi) liquidated damages pursuant to New York Labor Law for these violations.

10.      Plaintiff further complains, in the alternative, that he is owed compensation from Defendants for their breach of the Subcontractor Agreement, for Defendants' breach of the covenant of good faith and fair dealing with respect to the Subcontractor Agreement, and for quantum meruit.

11.      Plaintiff also seeks compensation for Defendants' defamation, based on Defendants' knowing and malicious lies to Plaintiff's prospective employers that have prevented Plaintiff from finding gainful employment.

## THE PARTIES

12.      Plaintiff is an individual domiciled in Kings County, New York.

4

13.     Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b); his written consent is attached hereto and incorporated by reference.

14.     Flat Rate is a corporation formed under the laws of the State of New York, with its principal place of business at 27 Bruckner Boulevard, Bronx, New York.

15.     Flat Rate is a moving company that serves clients across the United States and that moves its clients' property across state borders on a regular basis.

16.     Gholam is an individual who served as Chief Executive Officer of Flat Rate at all relevant times.

17.     At all relevant times, Gholam was a supervisor at Flat Rate who hired, fired and set pay rates for Flat Rate employees including Plaintiff.

18.     Carmel is an individual and is and has at all relevant times been an officer of Flat Rate.

19.     At all relevant times, Carmel was a supervisor at Flat Rate who hired, fired and set pay rates for Flat Rate Employees including Plaintiff.

20.     At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21.     Upon information and belief, at all relevant times, Flat Rate had gross annual revenues in excess of $500,000.

22.     Upon information and belief, at all relevant times, Defendants used goods and materials produced in interstate commerce and have employed at least two individuals who handled such goods and materials.

23.     Upon information and belief, at all relevant times, defendant Flat Rate has

constituted an "enterprise" as defined in the FLSA.

24.     Upon information and belief, Defendants John Does#1-10 represent the other owners, officers, directors, members, and/or managing agents of the Defendants, whose identities are unknown at this time, who participated in Defendants' day-to-day operations, who have the power to hire and fire employees, set wages and schedules, and  retain their records, and who constitute "employers" pursuant to the FLSA, New York Labor Law, and federal and state implementing regulations.

25.     Each of the Defendants constituted "employers" of Plaintiff as that term is used in the FLSA and New York Labor Law.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

27.     In addition, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).

28.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

29.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

## COLLECTIVE ACTION ALLEGATIONS

30.     Pursuant to 29 U.S.C. § 206 and § 207, Plaintiff seeks to prosecute their FLSA claims as a collective action on behalf of a collective class of persons defined as follows:

> All persons who are or were formerly employed by Defendants in the United States at any time since January 1, 2010, to the entry of judgment in this case (the "Collective Action Period"), who performed moving services for Flat Rate under the unlawful scheme described herein, and were either

6

misclassified as independent contractors or were engaged as truck crews
for said misclassified persons, and who were not paid statutory minimum
wages and/or overtime compensation at rates at least one-and-one-half
times the regular rate of pay for hours worked in excess of forty hours per
workweek (the "Collective Action Members").

31.     The Collective Action Members are similarly situated to Plaintiff in that they
were all underpaid pursuant to Defendants scheme to misclassify Plaintiff and other truck crew
members as independent contractors.

32.     They are further similarly situated in that Defendants had a policy and practice
of knowingly and willfully refusing to pay them the minimum wage or overtime.

33.     The exact number of such individuals is presently unknown, but is known by
Defendants and can be ascertained through appropriate discovery.

## COMMON FACTS

34.     At all relevant times herein, Defendants owned and operated a nationwide
moving company based in Bronx County, New York, namely, Flat Rate.

35.     Around July 8, 2010, Plaintiff and Defendants entered into the Subcontractor
Agreement.

36.     The Subcontractor Agreement required Defendants to pay Plaintiff's
corporation a certain portion of the fee that Flat Rate received from its moving clients for whom
Plaintiff provided moving services.

37.     While working under the Subcontractor Agreement, Defendants required
Plaintiff to arrive at the Flat Rate Bronx headquarters by 6:30 am to prepare his trucks for the
day.

38.     Defendants required Plaintiff and his truck crew to provide moving services to
Defendants' moving clients (the "Clients").  At least six days per week, Plaintiff and his truck

crew drove to a Client's old residence, packed a Client's furniture and other property for moving, transported that furniture and other property into a moving truck, drove the truck and the Client's belongings to the Client's new residence, and unloaded the Client's belongings into the new residence.

39.     Plaintiff and his truck crew sometimes performed moving services for three different Clients in one day.

40.     On occasion, Flat Rate required Plaintiff to move a Client from New York to several states away, such as to Washington, DC, or to Boston, Massachusetts.  On such occasions, Plaintiff would be engaged in moving a Client for several days at a time.

41.     After Plaintiff was done moving Flat Rate's Clients for a day, Flat Rate required Plaintiff to return all trucks to Flat Rate.  This usually occurred as late as 11:30 pm at night.

42.     From July 2010 to October 2011, Plaintiff and his truck crew consistently worked at least 17 hours per day.

43.     From July 2010 to October 2011, Plaintiff and his truck crew consistently worked at least 6 days per week.

44.     The Subcontractor Agreement permitted Flat Rate to deduct certain expenses from payments to Plaintiff.

45.     Defendants routinely deducted expenses from payments to Plaintiff that were not included in the category of deductions set forth in the Subcontractor Agreement.

46.     Defendants paid Plaintiff sometimes once per week, but sometimes less frequently, based on calculations made by Defendants of fees paid by Clients and deductions from those fees.

47.     Defendants required Plaintiff to "hire" a truck crew to help Plaintiff provide moving services to Defendants' Clients.

48.     Defendants dictated who Plaintiff could "hire" as his truck crew to help Plaintiff provide moving services to Defendants' Clients.

49.     Defendants dictated the compensation that Plaintiff's truck crew would receive from the money Defendants paid Plaintiff.

50.     Defendants maintained authority to drug-test Plaintiff and any of Plaintiff's truck crew.

51.     Defendants calculated this amount for each payment that Defendants made to Plaintiff.

52.     Defendants supervised and controlled all material aspects of the manner, place, and time of the moving services of Plaintiff and his truck crew.

53.     Despite the language of the Subcontractor Agreement, Plaintiff and his truck crew were actually employees of Defendants.

54.     Despite that Plaintiff and his truck crew were employees of Defendants, Defendants failed to pay Plaintiff and his truck crew the minimum wage as required by New York State Law and the federal Fair Labor Standards Act.

55.     Despite that Plaintiff and his truck crew were employees of Defendants, Defendants failed to pay Plaintiff and his truck crew overtime premiums as required by New York State Law and the federal Fair Labor Standards Act.

56.     Despite that Plaintiff and his truck crew were employees of Defendants, Defendants failed to track and record the hours worked by Plaintiff and his truck crew as required by New York State Law and the federal Fair Labor Standards Act.

57.     Despite that Plaintiff and his truck crew were employees of Defendants, Defendants illegally deducted from the wages of Plaintiff and his truck crew.

58.     Defendants required Plaintiff to rent moving trucks from Defendants to provide moving services to Defendants' Clients.

59.     Defendants required Plaintiff to pay for gasoline for all trucks he rented from Defendants.

60.     Defendants required Plaintiff to purchase and wear the Flat Rate Uniform at all times he was providing moving services.

61.     Defendants required Plaintiff to pay for all tolls crossed while providing moving services to Defendants' Clients.

62.     Defendants required Plaintiff to pay some or all parking tickets incurred while providing moving services to Defendants' Clients.

63.     Defendants required Plaintiff to pay for all tape used in packing a Client's property in preparation for a move.

64.     Defendants required Plaintiff to pay to rent trucks from another truck company if Defendants did not have enough trucks for Plaintiff to provide moving services to Defendants' Clients.

65.     Although Plaintiff incurred expenses in performing moving services for Defendants, Defendants never reimbursed Plaintiff for those expenses.

66.     Plaintiff's effective rate of pay was often below the statutory federal and state minimum wages in effect at relevant times.

67.     Defendants never provided Plaintiff with any notices or information regarding the "tip credit" and had no agreement in place with them regarding a tip credit.

68. Plaintiff's daily shift always lasted longer than 10 hours, but Plaintiff was not paid a "spread of hours" premium on days when he worked shifts lasting in excess of ten hours from start to finish.

69. Upon information and belief, Defendants did not keep accurate records of the tips received by Plaintiff.

70. Defendants' failure to pay Plaintiff an amount at least equal to the federal or New York state minimum wages in effect during all relevant time periods was willful, and lacked a good faith basis.

71. Plaintiff did not receive any paystubs or wage statements with his pay.

72. In addition, Defendants failed to pay Plaintiff any overtime premium for hours worked beyond 40 hours in a workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations.

73. Defendants' failure to pay Plaintiff the overtime premium for overtime hours worked was willful, and lacked a good faith basis.

74. Defendants failed to provide Plaintiff with written notices providing the information required by the Wage Theft Prevention Act – including, inter alia, Defendants' contact information, their regular and overtime rates, and intended allowances claimed – and failed to obtain his signature acknowledging the same, upon their hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

75. Defendants failed to provide Plaintiff with weekly records of his compensation and hours worked, in violation of the Wage Theft Prevention Act.

76. Upon information and belief, throughout the period of Plaintiff's employment, both before that time (throughout the Collective Action Period) and continuing until today,

Defendants have likewise employed other individuals like Plaintiff (the Collective Action Members) in positions at Defendants' moving company that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

77.      Upon information and belief, these other individuals have worked in excess of forty hours per week, yet Defendants have likewise failed to pay them (1) the minimum wage, or (2) overtime compensation of one-and-one- half times their regular hourly rate in violation of the FLSA and the New York Labor Law.

78.      Defendants never provided Plaintiff with any notice of his rights under the New York State Labor Law or the federal Fair Labor Standards Act

79.      Defendants did not post the required notice explaining the Fair Labor Standards Act in a conspicuous place so as to permit Plaintiff and other employees to readily read it.

80.      Upon information and belief, these other individuals also incurred expenses for their "tools of the trade" that were not reimbursed by Defendants.

81.      Upon information and belief, these other individuals were not provided with required wage notices or accurate weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

82.      Upon information and belief, while Defendants employed Plaintiff and the Collective Action members, and through all relevant time periods, Defendants failed to maintain accurate and sufficient time records or provide accurate records to employees, and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

83.      At all relevant times herein, Plaintiff was an employee engaged in commerce

and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

84.     Plaintiff's work was performed in the normal course of Defendants' business and was integrated into the business of Defendants, and did not involve executive or administrative responsibilities.

**COUNT I**
**(FLSA – Minimum Wage)**

85.     Plaintiff, on behalf of himself and all Collective Action Members, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

86.     At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

87.     Defendants failed to pay a salary greater than the minimum wage to Plaintiff and the Collective Action Members for all hours worked.

88.     As a result of Defendants' willful failure to compensate Plaintiff and the Collective Action Members at a rate at least equal to the federal minimum wage for each hour worked, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206.

89.     The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 26.

90.     Due to Defendants' FLSA violations, Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid compensation plus liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action,

13

pursuant to 29 U.S.C. § 216(b).

## COUNT II
### (New York Labor Law – Minimum Wage)

91.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

92.     At all relevant times, Plaintiff and the Collective Action Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

93.     Defendants willfully violated the rights of Plaintiff and the Collective Action Members by failing to pay compensation in excess of the statutory minimum wage in violation of the New York Labor Law §§ 190-199, 652 and their regulations.

94.     Defendants' failure to pay compensation in excess of the statutory minimum wage was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

95.     Due to Defendants' New York Labor Law violations, Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT III
### (FLSA - Overtime)

96.     Plaintiff, on behalf of himself and all Collective Action Members, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

97.     At all relevant times, Defendants employed Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

14

98.     At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek.

99.     As a result of Defendants' willful failure to compensate their employees, including Plaintiff and the Collective Action Members, at a rate at least one-and-one- half times the regular rate of pay for work performed in excess of forty hours per workweek, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

100.     The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

101.     Due to Defendants' FLSA violations, Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT IV
## (New York Labor Law - Overtime)

102.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

103.     At all relevant times, Plaintiff and the Collective Action Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

104.     Defendants willfully violated the rights of Plaintiff and the Collective Action Members by failing to pay him overtime compensation at rates at least one-and-one-half times

the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R. § 146.

105.      Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

106.      Due to Defendants' New York Labor Law violations, Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT V
## (New York Labor Law – Spread of Hours)

107.      Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

108.      At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

109.      Defendants willfully violated Plaintiff's rights by failing to pay him an additional hour's pay at the minimum wage for each day he worked more than ten hours, in violation of the New York Labor Law §§ 650 et seq. and its regulations in 12 N.Y.C.R.R. § 146-1.6.

110.      Defendants' failure to pay the "spread of hours" premium was willful, and lacked a good faith basis, within the    meaning of New York Labor Law § 198, § 663        and supporting regulations.

111.      Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants their unpaid compensation, liquidated damages, interest, reasonable

16

attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

<b><u>COUNT VI</u></b>

<b><u>(New York Labor Law – Unlawful deductions)</u></b>

112.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

113.    At all relevant times, Plaintiff employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

114.    Plaintiff was required to incur various expenses on behalf of Defendants in the course of his employment.

115.    Defendants failed to reimburse Plaintiff for these expenses.

116.    These failures to reimburse Plaintiff constitutes de facto deductions from wages.

117.    These de facto deductions were not for the benefit of Plaintiff and are not among the legitimate deductions authorized by New York Labor Law § 193.

118.    Moreover, these unreimbursed expenses brought Plaintiff's wages below the minimum wage, in violation of  12 N.Y.C.R.R. § 146-2.7(c).

119.    As a result, Defendants have violated New York Labor Law.

120.    These violations were willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

121.    Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants compensation for these unreimbursed expenses, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action.

## COUNT VII
### (New York Labor Law – Wage Theft Prevention Act)

122.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

123.     At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

124.     Defendants willfully violated Plaintiff's rights by failing to provide him with the wage notices required by the Wage Theft Prevention Act when he was hired, or at any time thereafter.

125.     Due to Defendants' New York Labor Law violations relating to the failure to provide wage notices, Plaintiff is entitled to recover from the Defendants statutory damages through the end of his employment, up to the maximum statutory damages.

126.     Defendants willfully violated Plaintiff's rights by failing to provide him with regular wage statements required by the Wage Theft Prevention Act at any time during their employment.

127.     Due to Defendants' New York Labor Law violations relating to the failure to provide wage statements, Plaintiff is entitled to recover from the Defendants statutory damages through the end of his employment, up to the maximum statutory damages.

## COUNT VIII
### (Frequency of Pay)

128.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

129.     At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

130.     Defendants willfully violated Plaintiff's rights by failing to pay him on a weekly basis as required by the New York Labor Law § 191(1)(a).

## COUNT IX
### (Breach of Contract)

131.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

132.     Plaintiff has performed all of his obligations under the Subcontractor Agreement.

133.     Flat Rate routinely deducted expenses from payments to Plaintiff that were not permitted to be deducted, in violation of the Subcontractor Agreement.

134.     Flat Rate has breached the Subcontractor Agreement.

Flat Rate's breach of the Subcontractor Agreement has caused damages to Plaintiff in an amount to be determined at trial.

## COUNT X
### (Quantum Meruit)

135.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

136.     Defendants specifically requested services from plaintiff.

137.     Plaintiff performed services for defendants from July 2010 through October 2011.

138.     Defendants accepted and benefited from plaintiff's services.

139.     Defendants have failed to compensate plaintiff in full for the benefits they have received from plaintiff's services.

140.     Plaintiff has no adequate remedy at law.

141.    Defendant is accordingly entitled to payment for his services in an amount to be determined at trial.

## COUNT XI
### (Breach of Covenant of Good Faith and Fair Dealing)

142.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

143.    Plaintiff entered into the Subcontractor Agreement with Flat Rate believing he would benefit from it.

144.    Under the Subcontractor Agreement, Plaintiff was to receive thirty-six percent (36%) of the amount Flat Rate charged to its customers for a moving job, less certain deductions.

145.    Subsequent to execution of the Subcontractor Agreement, Flat Rate required Plaintiff to provide his truck crew a certain percentage of the amount Plaintiff received from Flat Rate.

146.    Flat Rate knew, between the deductions permitted under the Subcontractor Agreement, the costs of fuel, tolls and other out-of-pocket expenses, and the amount it required Plaintiff to turn over to his truck crew for each job, that Plaintiff would actually receive no monetary benefit from the Subcontractor Agreement or, in some cases, would actually incur cost for the completion of a particular moving assignment.

147.    Flat Rate's failure to provide any benefit to Plaintiff under the Subcontractor Agreement was done knowingly and in bad faith.

148.    Plaintiff has been damaged by Flat Rate's breach of the covenant of good faith and fair dealing in an amount to be determine at trial.

## COUNT XII

### (Defamation)

149.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

150.    Since termination by Flat Rate, and within the past twelve (12) months, Plaintiff has applied for employment, listing Flat Rate as a former employer.

151.    Prospective employers have contacted Flat Rate regarding Plaintiff.

152.    Flat Rate has made false statements to prospective employers regarding Plaintiff, resulting in prospective employers declining to employ Plaintiff.

153.    Flat Rate's statements to prospective employers of Plaintiff have not been honest.

154.    Even if Flat Rate's statements are found to be honest, they were made with actual malice.

155.    Plaintiff has been damaged by Flat Rate's statements to prospective employers in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to  29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action members;

b.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c.      A compensatory award of unpaid compensation, at the statutory overtime rate, due under the FLSA and the New York Labor Law;

d.      Compensatory damages for failure to pay the minimum wage pursuant to the FLSA and New York Labor Law;

e.      An award of liquidated damages as a result of Defendants' willful failure to pay the statutory minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

f.      Compensatory damages for failure to pay the "spread of hours" premiums required by New York Labor Law;

g.      Compensation for monies deducted from Plaintiff's pay via unreimbursed expenses in violation of New York Labor Law;

h.      Liquidated damages for Defendants' New York Labor Law violations;

i.      Statutory damages for Defendants' violation of the New York Wage Theft Prevention Act;

j.      Back pay;

k.      Lost wages;

l.      Lost benefits

m.      Punitive damages;

n.      An award of prejudgment and postjudgment interest

o.      An award of costs and expenses of this action, together with reasonable attorneys' and expert fees; and

p.      Such other, further, and different relief as this Court deems just and proper.

Dated:      January 12, 2017
             New York, New York

                            LAW OFFICE OF MATTHEW C. HEERDE

                            _____

                  By:   Matthew C. Heerde
                        222 Broadway, 19th Fl
                        New York, New York 10038
                        Tel: 347-460-3588
                        Fax: 347-535-3588
                        Email: mheerde@heerdelaw.com
                        *Attorneys for Plaintiff Mirko Djurdjevich*

# LAW OFFICE OF MATTHEW C. HEERDE

222 BROADWAY 19TH FLOOR, NEW YORK, NEW YORK 10038
PHONE: 347-460-3588  FAX: 347-535-3588
MHEERDE@HEERDELAW.COM
WWW.HEERDELAW.COM

\*Matthew C. Heerde
admitted in New York
and California

January 10, 2017

TO:     Clerk of Court
RE:     Djurdjevic v. Flat Rate Movers Ltd et al.

I hereby consent to join this lawsuit as a party plaintiff.

Name:                        Mirko (Mike) Djurdjevic

Legal Representative:        Law Office of Matthew C. Heerde

Signature:

Date:                        January 10, 2017