UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 3 2018

Mirko Djurdjevich,

        Plaintiff,

–v–

Flat Rater Movers, Ltd. et al,

        Defendants

17-cv-261 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This action centers around alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by Defendants Flat Rate Movers, Ltd. ("Flat Rate"), Sam Gholam, Israel Carmel, and John Does #1-10. Defendants move to dismiss Plaintiff Mirko Djurdjevich's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

I.    **BACKGROUND**

In the summer of 2010, Defendants encouraged Plaintiff to form a corporation to provide moving services to Flat Rate. Dkt. No. 16 (FAC) ¶ 2. Flat Rate and Plaintiff's corporation then entered into a General Moving Subcontractor and Truck Lease Agreement. FAC ¶ 2; Dkt. No. 21, Ex. A. Although Defendants thus viewed Plaintiff as an independent contractor, the nature of the relationship between Plaintiff and Defendants did not change with the formation of Plaintiff's corporation. FAC ¶ 3. "Defendants continued to maintain complete control over Plaintiff's services—dictating his schedule, requiring Plaintiff to purchase and wear the Flat Rate uniform at all times, prohibiting Plaintiff from working for any other moving company, requiring Plaintiff to rent Flat Rate's trucks, and dictating how much Plaintiff's crew of truck workers

1

were paid from the fee Plaintiff received." FAC ¶ 3. Around October 2011, Defendants terminated Plaintiff's services. FAC ¶ 3.

As part of his work for Defendants, Plaintiff "provide[d] moving services" to Defendants' clients: He and his truck crew would arrive at one residence, pack a client's furniture and other property, transport them to the client's new residence, and unload them there. FAC ¶ 37. Defendants required Plaintiff to arrive at the Flat Rate headquarters in the Bronx by 6:30 am and return the trucks at the end of day, usually around 11:30 pm. FAC ¶¶ 39-40. From July 2010 to October 2011, Plaintiff and his truck crew worked at least 17 hours per day, 6 days per week, for a total of 102 hours per week. FAC ¶¶ 41-43.

Each client would pay Flat Rate a certain fee for the moving job. From that fee, Flat Rate deducted surcharges before calculating the commissionable amount. FAC ¶ 44. Defendants then gave Plaintiff 36% of the commissionable amount, but required that Plaintiff pay his truck crew and other work-related expenses from that percentage. FAC ¶ 44. For example, Defendants required Plaintiff to pay his crew 27% of the commissionable amount and to pay Defendants at least $75 per day per moving truck, to pay for gasoline for all trucks, to pay for any tolls and parking tickets incurred while providing moving services, and to pay for packing materials. FAC ¶¶ 46-51, 54. As a result, in one week, from October 2, 2011 to October 8, 2011, Plaintiff worked 102 hours and received $643.02 after deducting truck rental charges and the payment to his truck crew. FAC ¶ 56. Once Plaintiff paid for other expenses, like gasoline and packaging materials—expenses that cost $1,332.03—he actually lost $698.01 that week. FAC ¶ 56.

Around September 2012, the New York State Department of Labor determined that Plaintiff had been an independent contractor to Flat Rate and that Plaintiff's corporation was therefore liable for unemployment insurance contributions for the truck crew. FAC ¶ 4. Plaintiff

2

then pursued an appeal to the Unemployment Insurance Appeal Board, which decided that Flat Rate had been Plaintiff's employer from July 2010 to October 2011 and that, as a result, Plaintiff's corporation was not in fact liable for the unemployment contributions. FAC ¶ 5.

On January 12, 2017, Plaintiff filed suit against Defendants. Dkt. No. 1. In response to a motion to dismiss, *See* Dkt. No. 12, Plaintiff filed his First Amended Complaint on April 21, 2017. Dkt. No. 16. Plaintiff contends that Flat Rate, Gholam (the CEO of Flat Rate), and Carmel (a Flat Rate supervisor), along with ten John Doe officers, directors, members, and/or managing agents of Flat Rate, violated the FLSA and the NYLL by failing to pay Plaintiff and the Collective Action Members the required minimum wage or sufficient overtime compensation; and violated the NYLL by failing to pay the spread of hours premium, to reimburse Plaintiff for necessary expenses, to provide him with wage notices, and to pay him on a weekly basis. In addition, Plaintiff brings claims for breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, and defamation. Defendants now move to dismiss Plaintiff's complaint for failure to state a claim. Dkt. No. 19.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d

Cir. 2007). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C,* 622 F.3d 104, 111 (2d Cir. 2010). Here, the Court considers the complaint, Dkt. No. 16, and the Subcontractor Agreement, Dkt. No. 21, Ex. A.

## III. STATUTE OF LIMITATIONS

The statute of limitations for a claim under the FLSA is two years, or three years if the violation was willful. 29 U.S.C. § 255(a). The statute of limitations may, however, be tolled in certain circumstances. "[E]quitable tolling may be used to suspend the statute of limitations against a plaintiff who is unaware of his cause of action . . . ." *Yu G. Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) (quoting *Cerbone v. Int'l Ladies' Garment Workers Union,* 768 F.2d 45, 48 (2d Cir. 1985)). "The relevant question when considering a request to toll is whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action, and despite all due diligence he [wa]s unable to obtain vital information bearing on the existence of his claim." *Lanzetta v. Florio's Enters., Inc.,* 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011) (Chin, J.) (internal citations and quotation marks omitted). "[T]he failure to provide an employee with the notice required by the FLSA may be a sufficient basis for tolling . . . if that failure contributed to the employee's unawareness of his rights." *Id.* at 622-23 (internal quotation marks omitted). However, failure to disclose that an employee is entitled to overtime pay is generally not sufficient, on its own, to justify equitable tolling. *Upadhyay v. Sethi,* 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012). A plaintiff must also demonstrate that the failure to provide him with such notice contributed to his unawareness of his rights. *Id.* at 446. In *Parada v. Banco Industrial De Venezuela, C.A.,* 753 F.3d 62 (2d Cir. 2014), the

Second Circuit held that a plaintiff did not merit equitable tolling when, within the statute of limitations period, she had asked the Department of Labor to review her claim that she was owed compensation for her overtime work. *Id.* at 71. The court explained that by seeking review from the Department of Labor, the plaintiff had shown "that she was capable of taking legal action much earlier" than she had. *Id.* Because the decision to equitably toll a claim is a highly factual one, courts may decline to decide at an early stage whether equitable tolling is warranted. *See, e.g., Zhongwei Zhou v. Wu*, No. 14-cv-1775 (RJS), 2015 WL 925962, at *4 (S.D.N.Y. Mar. 3, 2015).

The statute of limitations for NYLL claims is six years. N.Y. Lab. Law §§ 198(3), 663(3). Under New York law, equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."[1] *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See*, 793 N.Y.S.2d 565, 568 (App. Div. 2005)). As with the federal equitable tolling standard, due diligence by the plaintiff "is an essential element of equitable relief." *Id.*

The Court concludes that it is too early to determine whether Plaintiff merits equitable tolling. On the one hand, in September 2012 the New York State Department of Labor determined that Plaintiff had been an independent contractor to Flat Rate, and Plaintiff then pursued an appeal to the Unemployment Insurance Appeal Board in which he apparently argued that he was in fact an employee of Flat Rate. FAC ¶¶ 4-5. That suggests Plaintiff may have

---

[1] The Court notes that several cases apply the same standard in deciding whether to toll the statute of limitations for NYLL claims as they apply in deciding whether to toll the statute of limitations for FLSA claims. *See, e.g., Kim v. Kum Gang, Inc.*, No. 12-CV-6344 (MHD), 2015 WL 2222438, at *38-39 (S.D.N.Y. Mar. 19, 2015); *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 273 (E.D.N.Y. 2008). At this stage, the difference, if any, between the federal and state tolling standards does not affect the Court's conclusion that it is too early to decide whether equitable tolling applies in this action.

been aware of the rights he seeks in this case at least at the time he pursued the appeal. On the other hand, unlike in *Parada*, there is no indication that Plaintiff was pursuing the same wage and hour violations in the Department of Labor proceeding that he alleges in this action. That Plaintiff argued before the Unemployment Insurance Appeal Board that he was an employee of Flat Rate, and that he makes the same argument here, says nothing about whether Plaintiff was aware of his cause of action under the FLSA or the NYLL. Moreover, Plaintiff alleges that Defendants did not provide him with any notice of his rights under the FLSA or the NYLL.[2] FAC ¶ 80; *see also* FAC ¶ 7 ("Defendants have sought to deceive Plaintiff and other similar workers, to lead them to believe they had no rights under federal and state wage and hour laws."). At this stage, it is not clear whether Defendants' alleged failure to provide the required notice led to Plaintiff's ignorance of his rights or whether he learned about his rights from another source. Accordingly, the Court declines to decide whether Plaintiff's claims under the FLSA and the NYLL may be equitably tolled. Defendants' motion to dismiss Plaintiff's FLSA and NYLL claims on the ground that the statute of limitations has passed is thus denied. Defendants may raise the argument again, if appropriate, at the summary judgment stage.

## IV. WAGE AND HOUR VIOLATIONS

The FLSA requires employers to pay "employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2015). The NYLL requires the same. *See id.* At all times relevant to this action, the minimum wage was $7.25. *See* 29 U.S.C. § 206(a).

---

[2] Defendants have submitted a declaration contesting this assertion. *See* Dkt. No. 28. However, as this is the motion to dismiss stage, the Court considers only the complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. The declaration does not qualify as any of those materials. The Court thus excludes it and instead accepts the allegations in Plaintiff's complaint as true and draws all reasonable inferences in his favor.

The interpretation of "employee" under the FLSA is broad, and district courts have "found that complaints sufficiently allege employment when they state where the plaintiffs worked, outline their positions, and provide their dates of employment." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013). In determining whether an entity constitutes the employer of the individual under the FLSA, courts consider whether, "as a matter of 'economic reality,' the entity functions as the individual's employer." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see also Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) ("[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts . . . .").

"The FLSA prohibits employers from requiring employees to purchase the tools of their trade or give any money back to their employers, when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Yahui Zhang v. Akami Inc.*, 15-CV-4946 (VSB), 2017 WL 4329723, at *8 (S.D.N.Y. Sept. 26, 2017) (quoting *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *4 (S.D.N.Y. Sept. 30, 2010)).

Here, Defendants suggest that Plaintiff was not in fact an employee of Defendants. They emphasize that the New York State Department of Labor initially determined that Plaintiff was an independent contractor of Flat Rate, rather than an employee, and that Plaintiff's corporation had entered into the Subcontractor Agreement with Flat Rate. *See* Dkt. No. 20 (Def. Memo) at 2-3; Dkt. No. 26 (Def. Reply) at 5. But the complaint contains details describing the employee-type relationship that Plaintiff had with Defendants. Beyond the statements in the complaint that Plaintiff was "employed by Defendants" within the meaning of the FLSA and the NYLL, *see*

FAC ¶¶ 94, 99, 105, the complaint also includes allegations describing Plaintiff's relationship with Defendants, like assertions that Defendants "maintain[ed] complete control over Plaintiff's services—dictating his schedule, requiring Plaintiff to purchase and wear the Flat Rate uniform at all times, prohibiting Plaintiff from working for any other moving company, requiring Plaintiff to rent Flat Rate's trucks, and dictating how much Plaintiff's crew of truck workers were paid from the fee Plaintiff received," FAC ¶ 3; *see also* FAC ¶ 3("[T]he nature of the working relationship between Plaintiff and Defendants did not change under this new 'independent contractor' scheme."); FAC ¶ 37 ("Defendants required Plaintiff and his truck crew to provide moving services to Defendants' moving clients."); FAC ¶¶ 34, 38, 39 (describing where Plaintiff worked); FAC ¶ 41 (stating that Plaintiff worked for Defendants from July 2010 to October 2011). Those detailed allegations are sufficient to survive a motion to dismiss. Though evidence produced during discovery may prove otherwise, Plaintiff has sufficiently alleged that he was an employee entitled to overtime and minimum wage under the FLSA and the NYLL.

As explained more fully below, Plaintiff has also sufficiently alleged wage and hour violations.[3]

### a. Overtime Compensation Violation

"[T]o survive a motion to dismiss [a FLSA overtime claim], Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours."[4] *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d

---

[3] Although Defendants state, "Plaintiff fails to adequately plead any of his causes of action," Def. Memo at 2, their memorandum in support of the motion to dismiss focuses, in the context of the FLSA and the NYLL causes of action, on Plaintiff's overtime, minimum wage, and spread of hours claims, *see* Def. Memo at 7-10. Accordingly, the Court does not analyze whether Plaintiff has sufficiently alleged claims for unlawful deductions, Wage Theft Prevention Act violations, or failure to make payments on a weekly basis.

[4] "The same pleading requirements for [a FLSA overtime claim] apply to [an overtime claim]

8

106, 114 (2d Cir. 2013). Accordingly, "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours." *Id.* When the hours alleged to have been worked by a plaintiff do not add up to more than 40 hours in any given week, the plaintiff has failed to state a plausible claim for overtime. *Id.* at 114-15. Similarly, a plaintiff must do more than simply repeat the language of the FLSA. *Dejesus*, 726 F.3d at 89.

Plaintiff alleges that he worked more than 40 hours per week without overtime compensation, and he provides detailed factual allegations to support that argument. He states that he and his truck crew worked at least 6 days per week, 17 hours per day during the time period at issue. FAC ¶¶ 41-42; *see also* FAC ¶ 39-40 (explaining that Plaintiff usually worked from 6:30 am to 11:30 pm). Accordingly, Plaintiff worked at least 102 hours per week. FAC ¶ 43. Given a federal minimum wage of $7.25, Plaintiff should have received $290 for the first 40 hours of work and $674.25[5] for the 62 hours of overtime. However, Plaintiff states that, at the end of a typical week, he was left with $643.02 (an average hourly rate of $6.30), even before Defendants imposed additional expenses for gasoline, parking tickets, and moving materials.[6]

---

under [the] NYLL." *Amponin v. Olayan America Corp.*, No. 14 Civ. 2008 (TPG), 2015 WL 1190080, at *4 (S.D.N.Y. Mar. 16, 2015) (citing *Lundy*, 711 F.3d at 118; *Dejesus*, 726 F.3d at 89). Here, the Court refers to the FLSA, but the analysis applies with equal force to Plaintiff's NYLL claim.

[5] Plaintiff calculates this amount as $673.32, FAC ¶ 57, but a minimum wage of $7.25 leads to an overtime rate of $10.875 (one and a half times the minimum wage), and 62 hours at a rate of $10.875 per hour should result in a total of $674.25. It appears that Plaintiff may have miscalculated the overtime rate by using a minimum wage of $7.24 rather than $7.25.

[6] Plaintiff states that Defendants required him to pay his truck crew "27% of the commissionable amount." FAC ¶ 54. Defendants read that statement to mean that Plaintiff paid his crew 27% of the amount that he received, *see* Def. Memo at 9, whereas Plaintiff insists that he meant that Plaintiff paid his crew 27% of the total commissionable amount, of which Plaintiff was to be paid 36%, *see* Dkt. No. 22 (Pl. Memo) at 11-12. Plaintiff's reading is supported by the text of the complaint, *see* FAC ¶¶ 44, 54, so the Court uses that interpretation. In addition, for purposes of the motion to dismiss, the Court accepts as true Plaintiff's allegations regarding the expenses

FAC ¶ 56. Given that Plaintiff should have received $674.25 in overtime but—even excluding additional expenses—received only $643.02 for the entire week, it is impossible, based on Plaintiff's allegations, that Defendants provided Plaintiff with the required overtime compensation. Accordingly, Plaintiff sufficiently alleges that Defendants failed to pay him the overtime compensation to which he was entitled.

That Plaintiff has provided details about only one week in which he worked overtime but was not paid overtime does not change this conclusion. *See Boutros v. JTC Painting & Decorating Corp.*, 989 F. Supp. 2d 281, 283 (S.D.N.Y. 2013) (explaining that the Second Circuit in *Lundy* "held that plaintiffs bringing a FLSA overtime claim must allege not merely that they *typically* worked unpaid overtime, but must specify *at least one week* in which they worked overtime hours but were not paid overtime"). Moreover, read in the light most favorable to Plaintiff, the allegations about that week serve as an example of a typical week. Defendants' motion to dismiss Plaintiff's overtime compensation claim is thus denied.

**b. Minimum Wage Violation**

A FLSA minimum wage claim arises when a plaintiff's "average hourly wage falls below the federal minimum wage." *Lundy*, 711 F.3d at 115. "To state a FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Tackie v. Keff Enters. LLC*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014).

Plaintiff has sufficiently alleged that Defendants failed to pay him the minimum wage. As explained above, at the end of a typical week, Plaintiff was left with $643.02. FAC ¶ 56. But

---

imposed on Plaintiff by Defendants, *see* FAC ¶ 55, and that they had the effect of reducing Plaintiff's compensation.

10

Defendants then imposed expenses for gasoline, parking tickets, and packaging materials. FAC ¶ 56. After those expenses, Plaintiff was out of pocket $698.01. FAC ¶ 56. Given that Plaintiff should have received at least $290 but instead ended up losing money for the week, Plaintiff's complaint sufficiently alleges that Defendants failed to pay him the federal minimum wage.[7] Likewise, the complaint alleges that Defendants failed to pay Plaintiff the minimum wage required by the NYLL. Accordingly, Defendants' motion to dismiss Plaintiff's minimum wage claims is denied.

### c. Spread of Hours Violation

Under New York law, when the spread of hours, i.e. the period of time worked in a given day, exceeds 10 hours, an employee must be paid "one hour's pay at the basic minimum hourly wage rate," in addition to his otherwise-required wages. N.Y. Comp. Codes R & Regs. tit. 12, § 142-2.4.

Plaintiff alleges that he "was not paid a 'spread of hours' premium" despite the fact that he worked shifts that exceeded 10 hours. FAC ¶ 70. At this stage of the litigation, and given that Plaintiff has alleged that Defendants paid him so little that he ended up *losing* money, the Court concludes that Plaintiff has sufficiently alleged a spread of hours violation. Defendants'

---

[7] The Court recognizes that Plaintiff has not separated out the 40 hours for which Plaintiff should have received minimum wage and the 62 hours for which Plaintiff should have received overtime compensation. Indeed, Plaintiff's allegations regarding how much he made from one four-hour job, *see* FAC ¶ 54, does not demonstrate whether Plaintiff received proper payment because it is unclear if those four hours were part of the base 40 hours or the additional 62 hours he worked. Similarly, if Plaintiff had only alleged that he had received $643.02 per week, resulting in an average hourly rate of $6.30, Plaintiff's minimum wage claim would likely have failed because that rate would have included the 40 hours for which Plaintiff deserved minimum wage and the 62 hours for which he deserved overtime compensation, making it possible that Plaintiff had received the minimum wage for 40 hours and then received less for the overtime hours. But because Plaintiff contends that, when the additional expenses imposed by Defendants are considered, he *lost* money for the week, it is impossible that Plaintiff received the appropriate minimum wage or overtime compensation.

11

motion to dismiss Plaintiff's spread of hours claim is accordingly denied.

## V. CONTRACT AND QUASI-CONTRACT CLAIMS

Defendants contend that Plaintiff lacks standing to pursue claims for breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing. Def. Memo at 11.

"Where the claim asserted is contractual and the plaintiff is not a party the contract or a third party beneficiary of the contract the claim must be dismissed." *Faggionato v. Lerner*, 500 F. Supp. 2d 237, 248 (S.D.N.Y. 2007) (citing *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 399 F.2d 289, 292 (2d Cir. 1968)).

Here, Plaintiff's contract claims must be dismissed. Plaintiff alleges breach of contract and breach of the covenant of good faith and fair dealing by Flat Rate in connection with its performance under the Subcontractor Agreement. FAC ¶¶ 133-136, 144-150. Yet Plaintiff is not a party to or a third party beneficiary of that Agreement. *See* Dkt. No. 21, Ex. A. Plaintiff contends that the Agreement "was a ruse to induce Plaintiff to go along with Defendants' scheme to mischaracterize him as an independent contractor," Dkt. No. 22 (Pl. Memo) at 12, but that does not change the fact that the only parties to the Subcontractor Agreement are Flat Rate and another company. Defendants' motion to dismiss Counts IX (breach of contract) and XI (breach of the covenant of good faith and fair dealing) is thus granted.

However, the Court rejects Defendants' argument that Plaintiff has no standing to pursue a quantum meruit claim against Defendants. A quantum meruit claim does not rely on the existence of an underlying contract. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005) (setting forth the requirements of a quantum meruit claim). Thus the fact that Plaintiff was not a party to the Subcontractor Agreement does not bar Plaintiff's quantum meruit claim.

Accordingly, the breach of contract and breach of the covenant of good faith and fair dealing claims—but not the quantum meruit claim—are dismissed.

## VI. DEFAMATION CLAIM

Flat Rate has also moved to dismiss Plaintiff's defamation claim. Def. Memo at 11-12.[8]

"To state a claim for defamation under New York Law, the plaintiff must allege: (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 704 N.Y.S.2s 1, 5 (App. Div. 1999)). An allegation of defamation "'is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.' . . . . Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim." *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994 (CM) (GAY), 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007) (quoting *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000)). Thus, "[w]hile plaintiffs are not required to plead defamation *in haec verba*," when a plaintiff makes an "unsupported claim that [his superior] said 'something bad' about him to a client," the plaintiff has "failed to afford [the defendant employer] 'sufficient notice of the communications complained of to enable [it] to defend [itself],'" and the claim is properly dismissed. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (last two alterations in original) (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).

Here, Plaintiff has failed to sufficiently allege a false statement. Plaintiff alleges that

---

[8] Plaintiff did not respond to Defendants' arguments in support of dismissing this claim.

"Flat Rate has made false statements to prospective employers regarding Plaintiff, resulting in prospective employers declining to employ Plaintiff." FAC ¶ 154. However, Plaintiff has not described the allegedly false statements or included "an indication of who made the communication[s] [or] when [they] w[ere] made." *Camp Summit*, 2007 WL 1152894, at *10. Plaintiff has thus "failed to afford [Flat Rate] sufficient notice of the communications complained of to enable [it] to defend [itself]." *Reilly*, 181 F.3d at 271. Accordingly, the Court grants the motion to dismiss Count XII, Plaintiff's defamation claim.

## VII. CONCLUSION

The Court grants in part and denies in part Defendants' motion to dismiss. Specifically, the Court grants the motion to dismiss Counts IX (breach of contract), XI (breach of the covenant of good faith and fair dealing), and XII (defamation). The Court denies the motion to dismiss the other claims. This resolves Docket Number 19. An initial pretrial conference is hereby scheduled for April 27, 2018, at 4:00 pm. The materials described at Docket Number 8 are due seven days before the conference.

SO ORDERED.

Dated: March 22, 2018
New York, New York

ALISON J. NATHAN
United States District Judge