UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MIRKO DJURDJEVICH, individually and on

behalf of others similarly situated,

                            Plaintiff,             Civil Action No.: 17-CV-00261 (AJN)(BCM)

    vs.

FLAT RATE MOVERS, LTD., SAM GHOLAM,
ISRAEL CARMEL and JOHN DOES 1-10,

                      Defendants.

------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANTS FLAT RATE MOVERS, LTD., SAM GHOLAM AND ISRAEL CARMEL IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................ 3

I.  FLAT RATE CONTRACTS WITH INDEPENDENT CONTRACTORS TO
   PROVIDE MOVING SERVICES TO CUSTOMERS ................................. 3

II.  PLAINTIFF DJURDJDEVICH, THROUGH HIS COMPANY BIG M
    DELIVERY, PROVIDED MOVING SERVICES TO FLAT RATE AS
    AN INDEPENDENT CONTRACTOR ..................................................... 3

III.  OPT-IN PLAINTIFFS BULUT AND BACOVIC WERE EMPLOYED BY
     BIG M DELIVERY AND HAD NO EMPLOYMENT RELATIONSHIP WITH
     FLAT RATE ..................................................................................... 6

STANDARD OF REVIEW ............................................................................. 7

ARGUMENT .............................................................................................. 8

I.  PLAINTIFFS ARE NOT EMPLOYEES OF FLAT RATE FOR PURPOSES OF
   THEIR CLAIMS UNDER THE NEW YORK LABOR LAW ....................... 8

   A.  Plaintiffs Worked at Their Convenience and Without A Fixed Schedule .......... 10

   B.  Plaintiffs Did Not Receive Fringe Benefits from Flat Rate .................. 12

   C.  Plaintiffs Were Not on Flat Rate's Payroll ........................................ 13

   D.  Plaintiffs Were Free to Engage in Other Employment .......................... 13

II.  PLAINTIFFS ARE INDEPENDENT CONTRACTORS UNDER THE FLSA ........ 14

   A.  Flat Rate Did Not Exercise Any Degree of Control Over Plaintiffs Sufficient to
      Create Employer-Employee Relationships Between the Parties .......................... 15

   B.  Plaintiff Djurdjevich Made Substantial Investment in His Trucking Businesses
      and Had the Opportunity for Profit or Loss While Contracting with Flat Rate.... 16

i

    C.   Plaintiff Djurdjevich Was A Skilled Mover Who Brought Years— Even Decades—Of Experience to His Business Relationships with Flat Rate ............ 18

    D.   Plaintiffs Did Not Have Permanent Business Relationships with Flat Rate ......... 18

    E.   The "Integral" Factor Does Not Change the Conclusion That Plaintiffs Were Independent Contractors as A Matter of Law ....................................................... 19

    F.   The Zheng Elements Do Not Support Joint Employment of Bacovic and Bulut ............................................................................................ 20

III.    PLAINTIFF'S FLSA CLAIMS ARE TIME-BARRED IN FULL AND HIS NYLL CLAIMS ARE TIME-BARRED IN PART ................................................................ 21

    A.   Standards Governing the Timeliness of Plaintiffs' Claims ................................... 21

    B.   Plaintiffs' FLSA Claims are Barred Under Either a Two- or Three-Year Statute of Limitations ........................................................................................................ 21

    C.   Plaintiffs NYLL Claims Are Time-Barred in Part ................................................ 22

IV.    NO TRIABLE ISSUES OF FACT EXIST ON PLAINTIFFS' EQUITABLE TOLLING CLAIMS .................................................................................................. 22

    A.   Standards Governing the Timeliness of Plaintiffs' Claims ................................... 22

    B.   Plaintiffs Have Failed to Identify Any "Extraordinary" Circumstances .............. 23

    C.   Plaintiffs Cannot Meet Their Burden to Establish Due Diligence ....................... 24

        1.   Plaintiffs Delayed Pursuit of their Claims Establishes That They Were Not Reasonably Diligent ...................................................................... 24

        2.   Plaintiffs Are Not Entitled to Toll the Claims That Had Lapsed by the Time They Filed Suit .............................................................................. 25

V.    THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS ............................................................ 26

CONCLUSION .................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................... 8

*Baldayaque v. United States*,
   338 F.3d 145 (2d Cir. 2003) ...................................................................... 26

*Barak v. Chen*,
   929 N.Y.S.2d. 315 (N.Y. App. Div. 2011) .................................... 11, 13

*Barfield v. N.Y. City Health & Hosps.*,
   537 F.3d 132 (2d Cir. 2008) ...................................................................... 15

*Bertin v. United States*,
   478 F.3d 489, n.3 (2d Cir. 2007) ............................................................ 25

*Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., Inc.*,
   687 N.Y.S.2d 667 (N.Y. App. Div. 1999) ................................ 8, 12, 13

*Bynog v. Cipriani Group, Inc.*,
   802 N.E.2d 1090, 1093 (2003) ............................................ 8, 9, 15, 16

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) .................................................................................... 26

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................... 7

*Chapman v. ChoiceCare Long Island Term Disability Plan*,
   288 F.3d 506 (2d Cir. 2002) ...................................................................... 23

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   788 F. Supp. 2d 253 (S.D.N.Y.2011) .................................................... 24

*Dole v. Amerilink Corp.*,
   729 F. Supp. 73 (E.D. Mo. 1990) ......................................... 16, 18, 20

*Edwards v. Publishers Circulation Fulfillment, Inc.*,
   No. 09-4968, 2010 U.S. Dist. LEXIS 59704 (S.D.N.Y. June 16, 2010) ........................... 9, 12

*Freund v. Hi-Tech Satellite, Inc.*,
   185 F. App'x 782 (11th Cir. 2006) .................................................... 16, 17

*Hengjin Sun v. China 1221, Inc., No. 12-CV-7135*
   (RJS) 2015 U.S. Dist. LEXIS 125131 (S.D.N.Y. Sept. 17, 2015) .......................... 8

*Herman v. Mid-Atl. Installation Servs., Inc.*,
   164 F. Supp. 2d. 667 (D. Md. 2000) .............................................. 16, 20

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999) ............................................................... 15

*Hizbullahankhamon v. Walker*,
   255 F.3d 65 (2d Cir. 2001) ......................................................... 23, 24

*Hodgson v. East Falls Sand and Gravel Co., Inc.*,
   No. 69-407, 1972 WL 952 (M.D. Pa. Aug. 30, 1972) ........................... 17

*In re Claim of Jarzabek*,
   738 N.Y.S.2d 742 (N.Y. App. Div. 2002) ............................................ 11

*In re Claim of Pavan*,
   570 N.Y.S.2d 696 .................................................................... 11, 14

*In re Claim of Seaver*,
   557 N.Y.S.2d 744 (N.Y. App. Div. 1990) ............................................ 14

*In re Claim of Werner*,
   619 N.Y.S.2d 379 (N.Y. App. Div. 1994) ....................................... 10, 13

*In re Hertz Corp.*,
   811 N.E.2d 5 (2004) ................................................................. 9, 10

*In re Matter of 12 Cornelia Street*,
   56 N.Y.2d 895 (N.Y. App. Div. 1982) ................................................ 15

*In re Ted Is Back Corp.*,
   475 N.E.2d 113 (1984) ................................................................... 9

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005) ............................................................. 8

*Kantor-Hopkins v. Cyberzone Health Club*,
   2007 WL 2687665 (E.D.N.Y. Sept. 10, 2007) ................................. 24, 25

*Lawrence v. Florida*,
   549 U.S. 327 (2007) ..................................................................... 22

*Ling Nan Zheng v. Liberty Apparel Co.*
   355 F.3d 61 (2d Cir. 2003) ............................................. 14, 15, 20, 21

*Liu v. Mount Sinai Sch. of Med.*
   2012 WL 4561003 (S.D.N.Y. Sept. 24, 2012) ...................................... 26

*Morgenweck v. Vision Capital Advisors, LLC*,
   No. 08-2969, 2010 U.S. Dist. LEXIS 141637 (S.D.N.Y. June 3, 2010) ......... 12, 13

*Nakahata v. N.Y. Presbyterian Healthcare Sys.*,
   723 F.3d 192 (2d Cir. 2013) ........................................................... 21

*Nichols v. All Points Transp. Corp.*,
    364 F. Supp. 2d 621 (E.D. Mich. 2005) ................................................................ 17, 18, 19

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002) ................................................................................... 24

*Shu Qin Xu v. Wai Mei Ho*,
    111 F. Supp. 3d 274 (E.D.N.Y. 2015) ................................................................... 22

*Smith v. McGinnis*,
    208 F.3d 13 (2d Cir. 2000) ............................................................................. 23, 25

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) ................................................................................. 21

*U.S. v. All Funds Distributed to Weiss*,
    345 F.3d 49 (2d Cir. 2003) ................................................................................... 22

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ........................................................................................... 26

*Upadhyay v. Sethi*,
    2012 WL 3100601 (S.D.N.Y. July 31, 2012) ..................................................... 23, 25

*Valdez ex rel. Donely v. United States*,
    518 F.3d 173 (2d Cir. 2008) ................................................................................. 24

*Velu v. Velocity Express, Inc.*,
    666 F. Supp. 2d 300 (E.D.N.Y. 2009) ........................................................... *Passim*

*Ward v. Bank of New York*,
    455 F.Supp.2d 262 (S.D.N.Y. Oct. 13, 2006) ....................................................... 27

*Warren v. Garvin*,
    219 F.3d 111 (2d Cir. 2000) ........................................................................... 22, 24

*Zhongwei Zhou v. Wu, 14-CV-1775 RJS*,
    2015 WL 925962 (S.D.N.Y. March 3, 2015) ........................................................ 21

**Statutes**

29 U.S.C. § 255 .......................................................................................................... 21

Fed. R. Civ. P. 56 ........................................................................................................ 7

N.Y. Labor Law § 198 ............................................................................................ 21, 22

## **INTRODUCTION**

Plaintiff Mirko Djurdjevich ("Djurdjevich" or "Plaintiff") is a business owner in the moving industry who provided moving services to Flat Rate Movers, Ltd. ("Flat Rate") pursuant to an agreement establishing an independent contractor relationship between Djurdjevich's company, Big M Delivery Services Inc. ("Big M") and Flat Rate. Opt-in Plaintiffs Dorde Bulut ("Bulut") and Dordije Bacovic ("Bacovic") (with Djurdjevich collectively "Plaintiffs") were employees of Big M who were hired by Djurdjevich, supervised by Djurdjevich and paid only by Djurdjevich.  Plaintiffs collectively assert claims against Flat Rate under the New York Labor Law and the Fair Labor Standards Act ("FLSA"), but independent contractors and those with whom there is no employment relationship cannot bring claims under either of these statutes. Accordingly, a threshold legal issue in this case is whether there was an employment relationship between plaintiffs and Flat Rate.  As discussed below, Plaintiffs' purported employment status turns on the degree to which Flat Rate exercised control over them, and whether Plaintiffs were dependent on Flat Rate for the opportunity to render services, were in business for themselves, or were controlled by another employer altogether.  Because the undisputed material facts make clear that Djurdjevich provided services to Flat Rate as an independent contractor and Flat Rate did not assert the level of control over opt-in plaintiffs Bulut and Bacovic, Plaintiffs' claims cannot survive summary judgment.

The undisputed material facts in Flat Rate's Local Civil Rule 56.1 Statement of Material Facts (the "Statement"), which is filed herewith and incorporated herein by reference, demonstrate that plaintiff Djurdjevich brought years of experience in the moving industry to his business relationship with Flat Rate, made investments of tens of thousands of dollars in leasing vehicles (both from Flat Rate and from other leasing companies) that he used to provide moving services

1

to Flat Rate, could and did refuse work, was free to provide moving services to other companies, could and did hire others to assist him in his work for Flat Rate, did not receive fringe benefits from Flat Rate, and was not on Flat Rate's payroll. Opt-in plaintiffs Bulut and Bacovic were hired by Big M Delivery, were controlled, directed and supervised by Big M Delivery, were on Big M Delivery's payroll, never received any compensation from Flat Rate and were generally unknown to Flat Rate. These facts lead to only one conclusion: that Djurdjevich provided services to Flat Rate as an independent contractor and Bacovic and Bulut were solely employees of Big M Delivery and Djurdjevich, having no employment relationship with Flat Rate.

Secondly, all of the plaintiff's FLSA claims were time-barred long ago under either the FLSA's two-year or three-year statute of limitations. Plaintiff Djurdjevich states in the Second Amended Complaint that "[d]efendants terminated Plaintiff's services around October 2011." *See* Second "Am. Compl." at ¶ 3. Opt-in plaintiffs Bulut and Bacovic state that the last time they performed services for a subcontractor of Flat Rate was in 2015.  Even applying the FLSA's three-year statute of limitations for willful conduct (though not applicable), plaintiff Djurdjevich's FLSA claims expired in October 2014 and opt-in plaintiffs' Bulut and Bacovic's claims expired in 2018. Upon dismissal of the FLSA claims, which are plaintiffs' only federal law claims, the Court should decline supplemental jurisdiction over the remaining state law claims. Should the Court retain jurisdiction of the state law claims, any claim by Djurdjevich for wages prior to January 12, 2011, any claim by Bulut for wages prior to February 8, 2013, and any claim by Bacovic for wages prior to February 12, 2013 are time-barred under NYLL's six-year statute of limitations. Moreover, Plaintiffs have not demonstrated any facts or evidence in discovery – whether documentary or testimonial – that would entitle them to equitable tolling. Rather, Plaintiffs' testimony demonstrates the opposite, that they were distinctly aware of their potential claims back in 2011.

## FACTUAL BACKGROUND

### I.   FLAT RATE CONTRACTS WITH INDEPENDENT CONTRACTORS TO PROVIDE MOVING SERVICES TO CUSTOMERS.

Flat Rate is a moving, transportation and storage company that provides services to customers nationwide.  (Declaration of David Giampietro filed herewith ("Giampietro Decl.") ¶ 3.)  Flat Rate's services include intra and interstate moving, long- and short-term storage.  (*Id.*)  During the relevant period of time, Flat Rate had moving crews of 280 employees and also contracted with outside moving companies to provide moving services. (*Id.* ¶¶ 4-5.)  The moving companies with whom Flat Rate contracts own and operate their own businesses and either perform services for Flat Rate with their own moving truck or lease one from Flat Rate.  (*Id.* ¶ 7.)  These companies often operate several trucks and moving crews, hire and terminate their own employees and supervise their employees' daily work.  (*Id.* ¶ 9.)  These businesses provide services to Flat Rate as independent contractors pursuant to independent contractor agreements.  (*Id.* ¶ 10).  Flat Rate employees at Flat Rate's facility at 27 Bruckner Blvd., Bronx, New York, organize customer moving orders into dispatch jobs and offer those dispatches to independent contractors.  (*Id.* ¶ 8.)  The independent contractors make themselves available for this work at their discretion.  (*Id.*)

### II.   PLAINTIFF DJURDJDEVICH, THROUGH HIS COMPANY BIG M DELIVERY, PROVIDED MOVING SERVICES TO FLAT RATE AS AN INDEPENDENT CONTRACTOR.

Plaintiff Djurdjevich provided moving services to Flat Rate pursuant to a General Moving Subcontractor and Truck Leasing Agreement (the "Agreement") and regularly accepted dispatches from Flat Rate at its facility located in the Bronx, New York.  (*Id.* ¶ 12; Exhibit 1 annexed to the Giampietro Decl.)  This agreement established and defined Plaintiffs' independent contractor relationships with Flat Rate.  (Giampietro Decl., Exhibit 1.)

Under the Agreement, plaintiff Djurdjevich, through his company Big M Delivery Corp. (which Djurdjevich solely owned), agreed to provide moving services to Flat Rate in exchange for a commission payment on a per move basis.  (Mirko Djurdjevich Deposition ("Djurdjevich Dep.") at Pg. 27, 9-12, 17-22; Pg. 28, 17-24; Pg. 31, 6-9, 17-21.)  Djurdjevich had the option of either bringing his own trucks or renting trucks from Flat Rate, Djurdjevich did both (Djurdjevich Dep. at Pg. 136, 22-25; Pg. 137, 2-8; Dorde Bulut Deposition ("Dorde Dep.") at Pg. 42, 13-23).  The Agreement gave Big M Delivery and Djurdjevich the freedom to exercise independent discretion and judgment as to the method, manner and means of performance of their contractual obligations to Flat Rate in all respects.  (Giampietro Decl. ¶ 13, Exhibit 1.)  For example, Flat Rate states in the Agreement that it makes no guarantee as to the number of contracts (jobs) that will be provided to Big M Delivery.  (Giampietro Decl. Exhibit 1.)

Big M Delivery and Djurdjevich were free to provide services to other carriers while contracting with Flat Rate, and they were also free to hire others to assist them in performing services for Flat Rate.  (Dordije Bacovic Deposition ("Dordije Dep.") at Pg. 12, 21-23; Bulut Dep. at Pg. 31, 11-12, 19-23; Pg. 35, 8-19.)  Big M Delivery and Djurdjevich had sole responsibility for and control over the individuals who they hired.  (Djurdjevich Dep. at Pg. 97, 21-25; Pg. 98, 2-6, 15-20; Pg. 102, 15-22; Bulut Dep. at Pg. 30, 11-24; Pg. 31, 24-25; Pg. 32, 2-4.)  Big M Delivery and Djurdjevich acknowledged that Flat Rate did not guarantee any amount of work and that their services to Flat Rate could result in their realization of a profit or loss.  (Giampietro Decl. Exhibit 1.) Flat Rate did not withhold taxes from Djurdjevich's compensation, but rather, issued IRS Form 1099s to them at year end, and Plaintiffs were solely responsible for filing all income tax returns related to their earnings.  (Giampietro Decl. ¶ 16.)  Flat Rate did not provide any other compensation or fringe benefits to Plaintiffs.  (*Id*.)  The Agreement could be terminated by either

party on 7-days' written notice.  (Giampietro Decl. Exhibit 1; Djurdjevich Dep. at Pg. 162, 19-22.)

On July 8, 2010, Big M Delivery entered into a subcontractor agreement with Flat Rate. (Djurdjevich Dep. at Pg. 43, 20-25; Pg. 44, 2-3, 15-18, 22-25; Pg. 45, 2-8; Pg. 87, 19-25; Pg. 88, 2-10; Am. Compl. at ¶ 45.)  Tony Pabone ("Pabone"), the operations manager at Flat Rate during the relevant time period, hired Big M Delivery following Djurdjevich's showing of the requirements necessary to be an independent contractor, i.e., a Workers' Compensation Certificate. (Pabone Dep. at Pg. 83, 2-17.)  Djurdjevich had a number of crews working for Big M Delivery with Flat Rate and each truck had one or more foremen.  Djurdjevich employed his own foremen for his moving jobs.  (Bacovic Dep. at Pg. 12, 21-23; Bulut Dep. at Pg. 31, 11-12, 19-23; Pg. 35, 8-19.)  In 2011, Big M Delivery hired Dordije Bacovic ("Bacovic") and Dorde Bulut ("Bulut"). (Djurdjevich Dep. at Pg. 92, 14-20; Pg. 94, 10-14; Bacovic Dep. at Pg. 9, 22-25; Bulut Dep. at Pg. 29, 3-7.)  Bacovic and Bulut were paid about $600 - $650 per week, in cash and check, directly from Big M Delivery.  (Bacovic Dep. at Pg. Pg. 10, 15-22; Pg. 12, 10-11; Pg. 16, 9-15; Bulut Dep. at Pg. 20, 24-25; Pg. 21 2-4; Pg. 33, 11-14; Pg. 34, 7-9; Pg. 36, 2-13; Djurdjevich Dep. at Pg. 95, 21-24.)

Big M Delivery would communicate with Flat Rate's offices at the end of the day to see about available jobs for the following day.  Big M Delivery could either accept or reject the job. (Djurdjevich Dep. at Pg. 129, 11-21; Bacovic Dep. at Pg. 18, 23-25; Pg. 19, 2-23; Pg. 43, 2-15; Pabone Dep. at Pg. 76, 8-19.)  Big M Delivery and Djurdjevich rejected a couple of jobs from Flat Rate each month since independent contractors were not forced to take the jobs offered by Flat Rate.  (Pabone Dep. at Pg. 100, 9-25; Pg. 101, 2-11; Giampietro Dep. at Pg. 25, 15-18.)  During certain times of the month, business would be busy, requiring Big M Delivery to rent Budget trucks

and appoint members of its moving crew to drive the trucks.  (Djurdjevich Dep. at Pg. 136, 22-25; Pg. 137, 2-8; Bulut Dep. at Pg. 42, 13-23.)  The size of the job would dictate the number of workers Big M Delivery and Djurdjevich would need.  (Djurdjevich Dep. at Pg. 160, 24-25; Pg. 161, 2-5.)

Djurdjevich and Big M Delivery paid their employees and foremen from the commission it received from Flat Rate.  (Djurdjevich Dep. at Pg. 95, 17-20; Bacovic Dep. at Pg. 13, 9-12; Bulut Dep. at Pg. 40, 5-7.)  If an employee of Big M Delivery had an issue with their pay, they would raise it with Djurdjevich.  (Bacovic Dep. at Pg. 13, 23-25; Pg. 14, 2-3.)  For example, in 2011, Bacovic believed he was not being paid enough for the number of hours he worked and raised it with Djurdjevich.  (Bacovic Dep. at Pg. 14, 24-25; Pg. 15, 2-21.)  In October 2011, Flat Rate terminated its subcontractor agreement with Big M Delivery.  (Djurdjevich Dep. at Pg. 172, 6-13.)

In total, Big M Delivery and Djurdjevich received $536,000 for the period of time they performed services for Flat Rate.  (Djurdjevich Dep. at Pg. 102, 4-8.)  Djurdjevich would pay his personal expenses, like telephone and rent, from Big M Delivery's bank account.  (Djurdjevich Dep. at Pg. 99, 17-25; Pg. 100, 2-5.)  Though Big M was making significant money, in 2010 and 2011, Djurdjevich believed he was being paid less than minimum wage.  (Djurdjevich Dep. at Pg. 157, 6-11; 21-24.)  In November or December 2011, Djurdjevich filed for unemployment benefits. (Djurdjevich Dep. at Pg. 180, 8-15.)  Big M Delivery was audited sometime between 2012 and 2014 by the State of New York.  (Djurdjevich Dep. at Pg. 117, 5-12.)

### III.   OPT-IN PLAINTIFFS BULUT AND BACOVIC WERE EMPLOYED SOLELY BY BIG M DELIVERY AND HAD NO EMPLOYMENT RELATIONSHIP WITH FLAT RATE.

#### 1.   <u>Dorde Bulut</u>

Dorde Bulut was hired by Big M Delivery in 2011.  Bulut worked for about a year with Big M Delivery.  Bulut previously worked for another subcontractor of Flat Rate, Vojislav, prior to working with Big M Delivery.  (Djurdjevich Dep. at Pg. 94, 10-14; Bulut Dep. at Pg. 10, 4-10,

17-19; Pg. 12, 4-12; Pg. 28, 15-18; Pg. 30, 4-8.)  Bulut was paid $600 - $650 per week from Big M Delivery and paid in both cash and check.  (Bulut Dep. at Pg. 20, 24-25; Pg. 21 2-4; Pg. 33, 11-14; Pg. 34, 7-9; Pg. 36, 2-13.)  Bulut does not know how many overtime hours he is owed for jobs performed with Big M Delivery for Flat Rate.  (Bulut Dep. at Pg. 75, 5-17.)

### 2.   Dordije Bacovic

Big M Delivery hired Dordije Bacovic ("Bacovic") in 2011.  Prior to working for Big M Delivery, Bacovic had never worked with or for Flat Rate.  Bacovic worked for Big M Delivery from April 2011 until January 2012.  (Djurdjevich Dep. at Pg. 92, 14-20; Bacovic Dep. at Pg. 9, 7-11, 22-25.)  Bacovic claims he was paid by Djurdjevich on a biweekly basis, mostly in checks but sometimes in cash.  Meanwhile Djurdjevich claims Bacovic was paid by Big M Delivery in cash, while other employees were paid in check.  (Bacovic Dep. at Pg. 10, 15-22; Pg. 12, 10-11; Djurdjevich Dep. at Pg. 95, 21-24.)  In 2011, Bacovic realized he was not being paid enough for the number of hours he worked and raised it with Djurdjevich, but Djurdjevich responded that he could not do anything about it.  (Bacovic Dep. at Pg. 14, 24-25; Pg. 15, 2-21.)  Bacovic does not know how much he is owed in minimum wage or overtime.  (Bacovic Dep. at Pg. 22, 4-16; Pg. 25, 10-24.)

After Big M Delivery's relationship with Flat Rate was terminated, Bulut and Bacovic went to work for other subcontractors of Flat Rate, like Astra Delivery, Banex Delivery, and Esmont Trucking.  (Bacovic Dep. at Pg. 24, 13-25; Pg. 25, 2-4; Bulut Dep. at Pg. 24, 20-25; Pg. 25, 2-11; Pg. 48, 13-18; Pg. 49, 21-25; Pg. 51, 2-4.)

### STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Summary judgment must be granted unless the nonmoving

party presents sufficient "significantly probative" evidence "for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A fact is only "material" for purposes of defeating a summary judgment motion if it "might affect the outcome of the suit…" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

Where the material facts are not in dispute, federal and New York courts alike have resolved independent contractor versus employment status questions as a matter of law. *See*, e.g., *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 307-8 (E.D.N.Y. 2009) (holding that plaintiff was an independent contractor as a matter of law for purposes of New York Labor Law and FLSA claims); *Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., Inc.*, 687 N.Y.S.2d 667, 669 (N.Y. App. Div. 1999) (holding that plaintiff was an independent contractor as a matter of law for purposes of New York Labor Law claims). Moreover, the courts in this district have decided questions regarding the application of equitable tolling at the summary judgment stage. *See Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS) 2015 U.S. Dist. LEXIS 125131, at *1 (S.D.N.Y. Sept. 17, 2015).

## **ARGUMENT**

## I.    **PLAINTIFFS ARE NOT EMPLOYEES OF FLAT RATE FOR PURPOSES OF THEIR CLAIMS UNDER THE NEW YORK LABOR LAW.**

In order to prevail on their New York Labor Law claims, Plaintiffs must first establish that they were employees entitled to the statute's protections. *Bhanti*, 687 N.Y.S.2d at 669. Under the New York Labor Law, whether a worker is an employee turns on the degree to which the putative employer exercised control over the worker. *See, e.g.*, *Velu*, 666 F. Supp. 2d at 306-7. The key factors relevant to assessing this control are whether the worker: "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id.* at 307 (*quoting Bynog v. Cipriani*

*Group, Inc.*, 802 N.E.2d 1090, 1093 (2003)). When applied to the undisputed facts of this case, all of these factors demonstrate, as a matter of law, that Plaintiffs were not employees of Flat Rate.

As a threshold matter, New York courts distinguish between control over results and control over the means used to accomplish them.  Specifically, although New York courts consider "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results," *Bynog*, 802 N.E.2d at 1093, the putative employer's "control over the means is the more important factor to be considered," *In re Ted Is Back Corp.*, 475 N.E.2d 113, 114 (1984).  Moreover, it is the degree of control that is critical to the analysis, and New York courts have uniformly recognized that mere "[i]ncidental control over the results produced - without further evidence of control over the means employed to achieve the results - will not constitute substantial evidence of an employer-employee relationship." *In re Hertz Corp.*, 811 N.E.2d 5, 6 (2004) (*citing Ted Is Back*, 475 N.E.2d at 114).  *See also Edwards v. Publishers Circulation Fulfillment, Inc.*, No. 09-4968, 2010 U.S. Dist. LEXIS 59704, at *12 (S.D.N.Y. June 16, 2010) (Under New York law, putative employer could permissibly direct both independent contractors and employees as to the results to be achieved, but could only direct employees concerning the means used to achieve those results).

Here, the business relationship between Plaintiffs and Flat Rate was fully consistent with the distinction recognized under New York law between control over results and the means used to accomplish them.  Indeed, Plaintiffs testified that Big M Delivery and Djurdjevich had the freedom to exercise independent discretion and judgment as to the method, manner and means of performance of their contractual obligations in all respects, and that Flat Rate did not regularly supervise their activities.  (Djurdjevich Dep. at Pg. 97, 21-25; Pg. 98, 2-6, 15-20; Pg. 102, 15-22; Bulut Dep. at Pg. 30, 11-24; Pg. 31, 24-25; Pg. 32, 2-4.) Plaintiffs testified that the only observation

of their work by Flat Rate was done at random, when quality control personnel would perform spot checks (Bulut Dep. at Pg. 17, 5-12; Pg. 27, 8-13; Pg. 55, 24-25; Pg. 56, 2-4; Bacovic Dep. at Pg. 17, 11-21.) Plaintiffs Bulut and Bacovic testified that Djurdjevich was his only supervisor and the only person he needed to answer to (Bulut Dep. at Pg. 30, 11-24; Pg. 31, 24-25; Pg. 32, 2-4; Bacovic Dep. at Pg. 13, 23-25; Pg. 14, 2-3.)  These facts are consistent with an independent contractor relationship under New York law.  *See Hertz*, 811 N.E.2d at 6 ("The requirement that the work be done properly is a condition just as readily required of an independent contractor as of an employee") (*quoting In re Claim of Werner*, 619 N.Y.S.2d 379, 381 (N.Y. App. Div. 1994) (Distributor's spot checks of work of deliverers with whom it contracted were not control over the means used to achieve the results, since "the distributor was entitled to know if its deliverers were doing their work")).

### A. Djurdjevich Worked at His Convenience Without A Fixed Schedule and Bacovic and Bulut Worked Only at the Direction of Djurdjevich.

When workers are not required to adhere to a fixed schedule mandated by a putative employer, and instead work at their convenience, these factors support independent contractor status under New York law.  *See Velu*, 666 F. Supp. 2d at 308 (driver was an independent contractor as a matter of law, inter alia, where he worked at his convenience and the putative employer "did not mandate a fixed schedule" for him); *In re Claim of Pavan*, 570 N.Y.S.2d 696, 697-98 (N.Y. App. Div. 1991) (independent contractor status of limousine drivers was supported where they had no set hours of operation and could work as much or as little as they wanted).

Here, Djurdjevich was given complete freedom regarding the days and times that he would perform services for Flat Rate (Djurdjevich Dep. at Pg. 129, 11-21) and Bulut and Bacovic were only directed and supervised by Djurdjevich (Bulut Dep. at Pg. 30, 11-24; Pg. 31, 24-25; Pg. 32, 2-4 Bulut Dep. at Pg. 30, 11-24; Pg. 31, 24-25; Pg. 32, 2-4).  There were no set hours mandated by Flat Rate

and the Subcontractor Agreement sets forth that there is no guarantee of work (Giampietro Decl., Exhibit 1, ¶ 1(b)).  Plaintiffs' freedom to work at their convenience is further supported by their right to refuse work.  New York courts have repeatedly determined that the right to refuse work supports independent contractor status.  *See Velu*, 666 F. Supp. 2d at 308 (where delivery driver could decline work, this supported that he worked at his convenience); *Barak v. Chen*, 929 N.Y.S.2d. 315, 318 (N.Y. App. Div. 2011) (drivers' discretion to refuse dispatches supported that they were independent contractors as a matter of law); *In re Claim of Jarzabek*, 738 N.Y.S.2d 742, 743 (N.Y. App. Div. 2002) (ability to refuse assignments supported drivers' independent contractor status); *In re Claim of Pavan*, 570 N.Y.S.2d 696, 697-98 (N.Y. App. Div. 1991) (at most, only incidental control over results where drivers were not obligated to accept assignments, but were obligated to complete them once accepted).  Here, Djurdjevich was free to decline any dispatch without penalty, and they admitted that they could, and did, refuse assignments. (Djurdjevich Dep. at Pg. 129, 11-21; Pabone Dep. at Pg. 100, 9-25; Pg. 101, 2-11.) Moreover, Djurdjevich had the freedom to—and did—hire others, like Bulut and Bacovic to assist them in performing their contractual obligations (Djurdjevich Dep. at Pg. 92, 14-20; Pg. 94, 10-14; Bacovic Dep. at Pg. 9, 7-11, 22-25; Bulut Dep. at Pg. 10, 4-10, 17-19; Pg. 12, 4-12; Pg. 28, 15-18; Pg. 30, 4-8.).  *See, e.g., Jarzabek*, 738 N.Y.S.2d at 743 (ability of drivers to hire others, who met minimum standards, supported the drivers' independent contractor status).  By contrast, employees do not have the freedom to hire others to do their jobs.

In addition, New York courts have repeatedly recognized that customer-oriented requirements that impact when a contractor must perform services do not support the existence of an employment relationship. *Velu*, 666 F. Supp. 2d at 308 (concluding that plaintiff worked at his convenience, despite the fact that his work schedule was "subject to the demands of the clients");

*Edwards*, 2010 U.S. Dist. LEXIS 59704, at *14 (noting that "the requirements that a specified number of deliveries be made . . . during specified times to specified locations, merely reflect[ed] - in an entirely appropriate and understandable way - the intended results" of the relationship between a newspaper company and delivery drivers with whom it contracted, where these requirements were imposed upon the newspaper by its clients). Similarly, any decisions that Plaintiffs made to regularly work for Flat Rate have no impact on their independent contractor status. *See in re Matter of 12 Cornelia Street*, 56 N.Y.2d 895, 897-98 (N.Y. App. Div. 1982) (salespersons were independent contractors, *inter alia*, where they were free to work whatever hours they chose, but voluntarily adhered to a schedule that they created for themselves). Here, to the extent that Plaintiffs regularly worked for Flat Rate and not other moving companies or for themselves, they chose to do so, and their choices were motivated by their desire to secure the most lucrative work and as much work as possible. (Djurdjevich Dep. at Pg. 136, 22-25; Pg. 137, 2-8; Bulut Dep. at Pg. 42, 13-23.) Accordingly, Djurdjevich's ability to provide services at his convenience and his lack of a fixed schedule supports his status as an independent contractor and Flat Rate's lack of any control over the schedule of Bulut and Bacovic's supports their status as solely employees of Djurdjevich's and Big M Delivery.

## B.  Plaintiffs Did Not Receive Fringe Benefits From Flat Rate.

Whether or not a worker receives fringe benefits from a putative employer is another factor bearing on employment status under the New York Labor Law. Independent contractor status is supported where a worker does not receive benefits. *See, e.g., Bhanti*, 687 N.Y.S.2d at 669; *Morgenweck v. Vision Capital Advisors, LLC*, No. 08-2969, 2010 U.S. Dist. LEXIS 141637, at *8 (S.D.N.Y. June 3, 2010), aff'd, 410 Fed. Appx. 400 (2d Cir. 2011). Here, it is undisputed that Flat

Rate did not provide any fringe benefits to Plaintiffs. Accordingly, this factor supports the conclusion that Plaintiffs were not employees of Flat Rate.

### C. Plaintiffs Were Not on Flat Rate's Payroll.

Plaintiffs' status as non-employees of Flat Rate are further supported by the fact that they were not on Flat Rate's payroll. When making employment status determinations for purposes of the New York Labor Law, New York courts evaluate whether a worker was on the payroll of the putative employer or paid as a non-employee. *See Morgenweck*, 2010 U.S. Dist. LEXIS 141637, at *8 (where worker was not on the payroll of the putative employer, this was a factor supporting his independent contractor status); *Bhanti*, 687 N.Y.S.2d at 669 (worker was an independent contractor as a matter of law, *inter alia*, where he was paid as a non-employee).

Here, it is undisputed that Djurdjevich, Bulut and Bacovic were never paid by Flat Rate (Djurdjevich Dep. at Pg. 95, 17-20; Bacovic Dep. at Pg. 13, 9-12; Bulut Dep. at Pg. 40, 5-7.) Big M Delivery was paid a commission fee per move, and Flat Rate did not withhold taxes from these payments, instead issuing IRS Form 1099s to Big M Delivery, which was solely responsible for filing tax returns related to its earnings. (Giampietro Decl. ¶ 16). These undisputed facts weigh in favor of independent contractor status under New York law. *See, e.g., Barak*, 929 N.Y.S.2d at 318 (independent contractor status of drivers supported where they received no salary or W-2 statements from car and limousine company and were paid a percentage of fares); *Werner*, 619 N.Y.S.2d at 380 (independent contractor status of newspaper deliverer supported where she received a Form 1099 and her pay was "subject to negotiation depending on circumstances").

### D. Plaintiffs Were Free to Engage in Other Employment.

Under New York law, the freedom to take on additional employment also supports non-employee status. For example, in *Velu v. Velocity Express, Inc.*, this factor supported the

conclusion that a delivery driver was an independent contractor as a matter of law, where he was free under his contract to work for other delivery companies.  666 F. Supp. 2d at 303, 308; *see also Pavan*, 570 N.Y.S.2d at 1037 (independent contractor status of limousine drivers supported where they could work for other organizations when they were not performing an assignment for the putative employer); *In re Claim of Seaver*, 557 N.Y.S.2d 744, 745 (N.Y. App. Div. 1990) (independent contractor status of newspaper deliverer supported where she was free to deliver newspapers in addition to those she delivered for the putative employer).

Here, Djurdjevich and Big M Delivery were free to provide moving services to other moving companies and directly to other customers (Bulut Dep. at Pg. 47, 19-25; Pg. 48, 2-11). Whether or not they chose to do so is irrelevant; it is their freedom to have done so that supports their independent contractor status.  *See Velu*, 666 F. Supp. 2d at 308.

## II.    PLAINTIFFS ARE INDEPENDENT CONTRACTORS UNDER THE FLSA.

Plaintiffs also cannot meet their threshold burden of demonstrating that they are employees covered by the FLSA.  To determine whether a worker is an employee for purposes of the FLSA, courts in the Second Circuit apply an "economic reality" test that considers the following five non-exclusive factors: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. *Velu*, 666 F. Supp. 2d at 305-6.

In *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003), the same court identified six flexible non-exhaustive elements to help determine whether an employer lacking formal control under the *Carter* factors could still exercise "functional control" over an employee:

(1) whether [the alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer]. *Zheng*, 355 F.3d at 72; *see also Teri*, 980 F. Supp. 2d at 374.

In *Barfield*, the Second Circuit warned that there is "no rigid rule for the identification of an FLSA employer," and instead applied the "nonexclusive and overlapping [*Carter* and *Zheng*] factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield v. N.Y. City Health & Hosps.*, 537 F.3d 132, 143 (2d Cir. 2008) (internal quotation marks and citation omitted). "[E]conomic reality is determined based upon *all* the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Zheng*, 355 F.3d at 71. "A district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship." *Teri* at 374 (citing *Zheng*, 355 F.3d at 71-72).

## A. Flat Rate Did Not Exercise Any Degree of Control Over Plaintiffs Sufficient to Create Employer-Employee Relationships Between the Parties.

The first prong of the economic reality test examines the degree of control exercised by the employer over the workers. *Velu*, 666 F. Supp. 2d at 306. As discussed above, all of the *Bynog* factors used to evaluate independent contractor versus employee status under the New York Labor

Law are used to assess that core control question. *See Id.* 306-7.  Accordingly, the above analysis regarding the *Bynog* factors—including in particular, the distinction between control over results and the means used to achieve them—applies to this first prong of the economic reality test and is therefore adopted herein.  *See, e.g.,* Velu, 666 F. Supp. 2d at 308 (plaintiff delivery driver had control over his work and work schedule for purposes of his FLSA claims despite the fact that he worked "subject to the demands of clients"); *Herman v. Mid-Atl. Installation Servs., Inc.*, 164 F. Supp. 2d. 667, 672-73 (D. Md. 2000) (requiring a contractor to meet client specifications is not the type of control that renders a worker an employee), *aff'd*, 16 F. App'x 104 (4th Cir. 2001); *Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mo. 1990) (quality controls imposed by cable company did not alter independent status).

### B. Djurdjevich Made Substantial Investment in His Moving Business and Had the Opportunity for Profit or Loss While Contracting with Flat Rate.

The second factor in the Second Circuit's economic reality test examines the workers' investment in their businesses and opportunity for profit and loss.  *Velu*, 666 F. Supp. 2d at 306. With respect to investment, courts evaluating the status of workers providing services using vehicles that they own have routinely concluded that the investment factor supports independent contractor status.  *See, e.g. Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783-84 (11th Cir. 2006) (independent contractor status supported where, inter alia, cable installer "drove his own vehicle and provided his own tools and supplies"); *Mid-Atl.*, 164 F. Supp. 2d. at 675 (investment factor supported independent contractor status of installers who owned their trucks); *Amerilink*, 729 F. Supp. at 76 (where cable installers "spen[t] significant amounts of money on their trucks and tools," this demonstrated that they had made "substantial" investment in their businesses).

Here, Djurdjevich hired his own moving crews, rented trucks, and obtained worker's compensation insurance among other sums he invested in his own business.  (Djurdjevich Dep. at

Pg. 136, 22-25; Pg. 137, 2-8; Bulut Dep. at Pg. 42, 13-23.)   In addition, Djurdjevich was responsible for all costs and expenses incidental to the operation of his business, such as fuel and supplies.   (Djurdjevich Dep. at Pg. 99, 17-25; Pg. 100, 2-5). These significant investments by Djurdjevich strongly support his independent contractor status. Bacovic and Bulut were hired by Djurdjevich and Djurdjevich alone supervised them. Flat Rate had no supervisory authority or control whatsoever over them.

Djurdjevich also unquestionably had the opportunity for profit or loss from his business relationship with Flat Rate.  First, he acknowledged in the Subcontractor Agreement that Flat Rate did not guarantee any amount of work to them and Djurdjevich understood that his contractual services for Flat Rate could result in a profit or a loss.  (Giampietro Decl., Exhibit 1, ¶ 1(b).) There was no guarantee that they would make any set amount of money. *Id*. Indeed, the commission amounts that Big M Delivery received from Flat Rate varied depending upon the amount of work the company performed for Flat Rate.  Djurdjevich could increase his profits by renting more trucks and hiring employees to increase his capacity.

All of these facts strongly support Djurdjevich's independent contractor status under the economic reality test. *See, e.g., Freund*, 185 F. App'x at 783 (worker's ability to earn greater sums of money by accepting more jobs, performing more efficiently and hiring employees supported his independent contractor status); *Nichols v. All Points Transp. Corp.*, 364 F. Supp. 2d 621, 634 (E.D. Mich. 2005) (drivers were independent contractors as a matter of law where "they ha[d] managerial control over their expenses which [gave] them a stake in controlling whether they profit[ed] from hauling") (FMLA case applying FLSA test); *Hodgson v. East Falls Sand and Gravel Co., Inc.*, No. 69-407, 1972 WL 952, at *4 (M.D. Pa. Aug. 30, 1972) (truck driver was independent

contractor, *inter alia*, where "his opportunity for profit and loss depended to a large extent on the size and number of trucks he owned" and "the number of trips he was willing to take").

### C. Djurdjevich Was A Skilled Mover Who Brought Years of Experience to His Business Relationship with Flat Rate.

The skills that Djurdjevich brought to his business relationships with Flat Rate and used during those relationships further support Big M Delivery's independent contractor status. Djurdjevich does not dispute that he was a skilled mover with many years of experience in the moving industry when he began contracting with Flat Rate. As a result, he brought a host of valuable skills to his business relationships with Flat Rate, including his moving experience, professional driving skills and his company's own DOT Carrier License.

Courts have routinely concluded that these types of skills support determinations of independent contractor status. For example, when analyzing the work of freight truck drivers under the economic reality test, the court in *Nichols* concluded that "the degree of skill required for these drivers favors finding that they are independent contractors" because "the drivers must exercise entrepreneurial skills often associated with small business owners" and "must manage their operating costs and expenses and navigate the regulatory landscape associated with hauling freight." 364 F. Supp. 2d at 632. *See also Amerilink*, 729 F. Supp. 77 (independent contractor status of cable installers was supported where their success required "initiative in arriving at the [cable company's] offices early enough to get good routes" and "organizational skills with regard to the hiring of helpers").

### D. Plaintiffs Did Not Have Permanent Business Relationships with Flat Rate.

The fourth economic reality test factor looks at the permanence or duration of the working relationship. *Velu*, 666 F. Supp. 2d. at 306. Where a worker performs services pursuant to an independent contractor agreement that is terminable at any time by either party, this is a factor

18

supporting independent contractor status. *Nichols*, 364 F. Supp. 2d at 631.  For example, in *Nichols*, drivers performed services pursuant to agreements with a shipping company that "last[ed] for a period of one year but continue[d] on a year-to-year basis unless terminated by either party through written notice." *Id*. The court concluded that these contract terms "ma[de] the agreement terminable at any time by either party and [did] not suggest a permanent relationship," which was indicative of independent contractor status. *Id*.

Here, this factor supports independent contractor status, because the Subcontractor Agreement was ongoing until terminated by either party on seven-days' written notice.  The fact that Plaintiffs provided services to Flat Rate for a number of years does not change this conclusion. Indeed, in *Velu*, this Court did not hesitate to conclude that the plaintiff delivery driver was an independent contractor as a matter of law, even though he had contracted with the putative employer delivery company for approximately 10 years.  *Velu*, 666 F. Supp. 2d. at 303, 308.

## E.  The "Integral" Factor Does Not Change the Conclusion That Plaintiffs Were Non-Employees as A Matter of Law.

The final economic reality test factor considers whether the worker performs work that is an integral part of the putative employer's business.  *Id.* at 306.  Here, the moving services that Plaintiffs provided to Flat Rate, while important, related to only one of many aspects of Flat Rate's business, which includes storage and logistics (*see* Giampietro Decl. ¶ 3).  And even if Plaintiffs' work was deemed an integral part of Flat Rate's business, this Court recently concluded that a delivery driver was an independent contractor as a matter of law despite the fact that his work was an integral part of the business of the delivery company with whom he contracted.  *Velu*, 666 F. Supp. 2d. at 307-08.  Other courts also have not hesitated to conclude that workers were independent contractors, even where their work was integral to the putative employer's business. *See*, *e.g.*, *Nichols*, 364 F. Supp. 2d at 634 (truck drivers were independent contractors as a matter

of law even though their work was integral to shipping company's business); *Mid-Atl.*, 164 F. Supp. 2d. at 677 (installers were independent contractors as a matter of law even though their work was integral); *Amerilink*, 729 F. Supp. at 77 (installers were independent contractors even though installation was putative employer's entire business). Accordingly, this factor is neutral, and the totality of circumstances lead to the conclusion that Plaintiffs were non-employees as a matter of law.

### F.  The Zheng Elements Do Not Support Joint Employment of Bacovic and Bulut

Utilizing the *Zheng* elements set forth above,[1] all support the finding that Flat Rate was not a joint employer of opt-in plaintiffs Bacovic and Bulut.  Flat Rate's premises and equipment were not used for Bacovic and Bulut's work. Big M Delivery could shift as a unit from one subcontractor relationship to another. (Bulut Dep. at Pg. 46, 22-25; Pg. 47, 2-15.) Bacovic and Bulut did not perform discrete jobs that were integral to Flat Rate's work as Bacovic and Bulut's work as movers was not distinct and could have been performed by many.  Lastly, Bacovic and Bulut were not supervised to any degree by Flat Rate.  Taking the *Zheng* elements as a whole, they do not support a finding of joint employment in this typical outsourcing relationship that Flat Rate used for overflow and increased seasonal work, recognized as completely legitimate in *Zheng*, "[t]he "economic reality" test, therefore, is intended to expose outsourcing relationships that lack a substantial economic purpose, but it is manifestly not intended to bring normal, strategically

---

[1] (1) whether [the alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer].  *Zheng*, 355 F.3d at 72; *see also Teri*, 980 F. Supp. 2d at 374.

oriented contracting schemes within the ambit of the FLSA." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75-76 (2d Cir. 2003).

### III.   PLAINTIFFS' FLSA CLAIMS ARE TIME-BARRED IN FULL AND THEIR NYLL CLAIMS ARE TIME-BARRED IN PART

#### A.   Standards Governing the Timeliness of Plaintiffs' Claims.

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 426 (2d Cir. 2008).   Claims arising under the Fair Labor Standards Act ("FLSA") are subject to a two- or three-year limitations period (depending on whether the violations are ultimately found to be willful), while claims arising under the New York Labor Law ("NYLL") are subject to a six-year limitations period (regardless of whether the violations are found to be willful).   29 U.S.C. § 255(a); N.Y. Labor Law §§ 198(3), 663(3).   Both FLSA and NYLL claims accrue on the pay period that corresponds to the time services were rendered for the employer.   *Nakahata v. N.Y. Presbyterian Healthcare Sys.,* 723 F.3d 192 (2d Cir. 2013) (internal citations omitted).

#### B.   Plaintiffs' FLSA Claims are Barred Under Either a Two- or Three-Year Statute of Limitations.

The FLSA provides a two-year statute of limitations on actions to enforce its provisions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).   Djurdjevich claims that he last performed services for Defendants in October 2011. Opt-in plaintiff Bulut claims he last performed services for a Flat Rate subcontractor in 2015 and opt-in plaintiff Bacovic last performed services for a Flat Rate subcontractor in 2015.   Thus, under either a two or three-year statute of limitations, Djurdjevich's FLSA claims expired long ago, in October 2014, and Bacovic's and Bulut's expired in 2018.   *See Zhongwei Zhou v. Wu*, 14-CV-1775 RJS, 2015 WL 925962 (S.D.N.Y. March 3,

2015).   As a result, Djurdjevich's FLSA claims are time-barred and must be dismissed with prejudice.

### C.  Plaintiffs' NYLL Claims Are Time-Barred in Part

The NYLL statute of limitations is six years. N.Y. Lab. Law §§ 198(3), 663(3). Djurdjevich filed this action on January 12, 2017.   Djurdjevich alleges in the Complaint that Defendants violated the NYLL from July 2010 to October 2011. *See* Am. Compl. at ¶¶ 104-107, 115-139.   NYLL's six-year statute of limitations thus extends back six years from January 12, 2017 to January 12, 2011, rendering any claims from July 2010 to January 12, 2011 time-barred. *See e.g. Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274 (E.D.N.Y. 2015).   Plaintiffs Bacovic and Bulut filed their consent forms on February 12, 2019 and February 8, 2019, respectively, rendering any claims prior to 2013 time-barred. Bacovic and Bulut ceased performing services for Big M Delivery in December 2011, but then went on to work for other Flat Rate subcontractors on and off until 2015, though Bulut could not specify the time that he stopped working for a Flat Rate subcontractor.

### IV.    NO TRIABLE ISSUES OF FACT EXIST ON PLAINTIFFS' EQUITABLE TOLLING CLAIMS

### A.  Standards Governing the Timeliness of Plaintiffs' Claims

The doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000).   A plaintiff seeking tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).   "Generally, equitable tolling is difficult [for a plaintiff] to attain, as it is reserved for "extraordinary or exceptional circumstances." *U.S. v. All Funds*

*Distributed to Weiss*, 345 F.3d 49, 54 (2d Cir. 2003). The Second Circuit has "defined ... rules [that] allow a court … to make narrow exceptions to the statute of limitations" under sufficiently "compelling circumstances." *Id.* at 54-55 (internal citations and quotations omitted).

A plaintiff bears the burden of proof to demonstrate why his particular circumstances entitle him to equitable tolling. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). He must show that "a causal relationship between the extraordinary circumstances [he invokes] and the lateness of his filing." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (internal citations and quotations omitted). No causal relationship exists if he could have filed on time notwithstanding those circumstances, had he acted with reasonable diligence. *Id.* A plaintiff must show that he "acted with reasonable diligence throughout the [entire time] period he seeks to toll. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (emphasis added). In cases where the "alleged extraordinary circumstances ceased early in the limitations period," the Court's inquiry turns to whether the Plaintiff "diligently pursued his application in the time remaining." *Hizbullahankhamon*, 255 F.3d at 75.

**B. Plaintiffs Have Failed to Identify Any "Extraordinary" Circumstances**

Plaintiffs have no basis for equitable tolling. Even if Defendants' alleged failure to provide and post wage-and-hour notices in Flat Rate's facility at 27 Bruckner Blvd., Bronx, New York, created an inference for equitable tolling, which it does not, no triable issue of fact exists as to whether any alleged failure to post notices in the facility could justify tolling Plaintiffs' claims. "An employer's failure to tell a plaintiff of her legal rights is not by itself sufficient … the employer or some other exceptional circumstance must have actually prevented the exercise of plaintiff's legal rights in some way.…To hold otherwise would be tantamount to holding that the statute of limitations should be tolled in nearly every wage-and-hour case." *Upadhyay v. Sethi*, 2012 WL 3100601, at \*2 (S.D.N.Y. July 31, 2012) (internal citations and quotations omitted); *see*

*also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 318–19 (S.D.N.Y.2011) (equitable tolling not warranted where employer failed to post notice because "there is no allegation that defendants engaged in anything more, *e.g.*, some sort of deception") (internal citations and quotations omitted).   Moreover, there is undisputed documentary evidence and testimony that Flat Rate did, in fact post the required wage and hour notices. (Giampietro Decl., Exhibit 2.; Giampietro Dep. at Pg. 80, 7-17.)

### C.  Plaintiffs Cannot Meet Their Burden to Establish Due Diligence

Even if Plaintiffs "could rely on equitable tolling on the basis of defective notice," [they] [w]ould forfeit that right if [they] failed to exercise due diligence to the prejudice of the defendant." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 183 (2d Cir. 2008) (internal citations omitted).   Instead, they must be prepared to show that they acted with "reasonable diligence" to suggest that it was the extraordinary circumstances that they evoke which *caused* them to untimely file suit.   *See Hizbullahankhamon*, 255 F.3d at 75.   The Second Circuit has "made it clear that [the court only] had in mind situation[s] where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action" in order for equitable tolling to be justified.   *Pearl v. City of Long Beach*, 296 F.3d 76, 84-85 (2d Cir. 2002) (internal citations omitted).   Plaintiffs have not proffered any evidence to suggest a triable issue exists on this point.

### 1.  Plaintiffs Delayed Pursuit of their Claims Establishes That They Were Not Reasonably Diligent

Extensive delays alone constitute "sufficient evidence that a party was not reasonably diligent in its efforts."   *Kantor-Hopkins v. Cyberzone Health Club*, 2007 WL 2687665, at *6 (E.D.N.Y. Sept. 10, 2007); *see also Warren*, 219 F.3d at 113-14 (explaining that a prolonged "period of inactivity [cannot be seen] as anything other than a marked lack of diligence").   A party

must act as "expeditiously as feasible" under the circumstances. *Kantor-Hopkins*, 2007 WL 2687665, at *6 (internal citations and quotations omitted). There is no evidence to suggest that Plaintiffs acted in a reasonably timely fashion here.

To the contrary, all of the Plaintiffs testified that they believed they were underpaid during the period of time that they worked for Big M Delivery in 2011 (Bacovic Dep. at Pg. 14, 24-25; Pg. 15, 2-21; Bulut Dep. at Pg. 75, 5-17). Plaintiff Djurdjevich stopped providing independent contractor services through Big M Delivery in 2011. Bacovic and Bulut stopped working for Flat Rate subcontractors in 2015. Plaintiffs have failed to proffer any evidence of what, if anything, they did in the meantime. For any of them to prevail, they "must have exercised diligence in pursuing the discovery of [their] claim[s] *during the entirety of the period* [they] seek [] to have tolled. Thus, when a party has failed to acquire the knowledge or documents necessary to bring suit because of its own delinquency, equitable tolling is not an appropriate remedy." *Upadhyay*, 2012 WL 3100601, at *1 (*citing Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). The total absence of evidence on their efforts mandates only one conclusion: that they were utterly delinquent in pursuing their claims. Courts have been less forgiving of much shorter lag times. *See Bertin v. United States*, 478 F.3d 489, n.3 at 494 (2d Cir. 2007) (petitioner who delayed three years to file motion did not act with reasonable diligence). Moreover, Djurdjevich specifically knew about his claims because there was a New York Attorney General investigation into his failure to pay his Big M Delivery employees at the end of 2012. (Djurdjevich Dep. at Pg. 117, 5-12.)

### 2. Plaintiffs Are Not Entitled to Toll the Claims That Had Lapsed by the Time They Filed Suit

Finally, to the extent that Plaintiffs seek to toll the limitations period with respect to their FLSA claims, they are not entitled to do so when Djurdjevich did not start exercising any efforts

to pursue his legal rights until 2017 and Bacovic and Bulut until 2019 — *after* those claims had already expired. One of the factors identified by the Second Circuit for evaluating a party's diligence is whether he made "efforts at the earliest possible time to secure counsel." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003). Here, it is undisputed that Plaintiffs made no such efforts until 2017 and 2019, respectively, despite believing that they had been underpaid since 2011 (Bacovic Dep. at Pg. 14, 24-25; Pg. 15, 2-21.) Because the FLSA statute of limitations had already expired as to their claims that accrued at the beginning of their employment, their efforts were too little, too late. "Because these events do not relate to [their] efforts to pursue and protect [their] rights during the limitations period they could not have stood in the way of [their] timely filing the complaint." *Liu v. Mount Sinai Sch. of Med.*, 2012 WL 4561003, at *5 (S.D.N.Y. Sept. 24 2012).

## V. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

The general rule is that should all federal law claims be dismissed, then the Court should decline jurisdiction over and dismiss without prejudice to refile in state court, any remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

As set forth herein, Plaintiffs' FLSA claims, their only federal law claims, are time-barred and should be dismissed with prejudice. Their only remaining claims are those under the NYLL. *See Jian Long Li v. Li Qin Zhao*, F.Supp.3d 300 (E.D.N.Y. Aug. 8, 2014) (court dismissed plaintiff's FLSA claims and declined to exercise supplemental jurisdiction over the state-law claims); *see also Ward v. Bank of New York*, 455 F.Supp.2d 262 (S.D.N.Y. Oct. 13, 2006).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Flat Rate Movers, Ltd., Sam Gholam and Israel Carmel, respectfully requests that this Court grant their motion for summary judgment on the grounds set forth herein.

Dated: New York, New York
      November 8, 2019                TRAVIS LAW PLLC


                                     _____/s/_____
                                       By: Christopher Travis
                                         Joseph DeBlase
                                     80 Maiden Lane, Suite 304
                                     New York, New York 10038
                                     (212) 248-2120