USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mirko Djurdjevich, *et al.*,

                Plaintiffs,

      –v–

Flat Rate Movers, Ltd., *et al.*,

                Defendants.

17-cv-261 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Mirko Djurdjevich initiated this action against Defendants Flat Rate Movers, Ltd., Sam Gholam, Israel Carmel, and John Does # 1–10, asserting employment law violations under federal and state law. Presently before the Court is Defendants' motion for summary judgment. Dkt. No. 96. For the reasons that follow, Defendants' motion is GRANTED.

## I. BACKGROUND

    The following facts are undisputed except where specifically noted. Plaintiff Mirko Djurdjevich previously worked for Defendant Flat Rate Movers, Ltd. ("Flat Rate"), a moving company. From 2006 to 2008, Djurdjevich was employed by Flat Rate as a driver and foreman of a truck crew; he started as a 1099 employee and became a W-2 employee in 2007, and he was paid commission for each job he worked. Dkt. No. 101 ("Pl.'s Rule 56.1 Resp.") ¶¶ 74–75. During his employment, he earned between $19,000 and $47,000 per year. *Id.* ¶ 77. Djurdjevich was demoted in 2008 after an employee he supervised was injured on the job, and he subsequently resigned. *Id.* ¶ 76.

    Plaintiffs allege that in 2010, the New York State Attorney General fined Flat Rate around $1 million for failure to pay overtime wages. *Id.* ¶ 101. That year, Flat Rate began using

independent contractor moving crews. *Id.* ¶¶ 43–45. Flat Rate manager Tony Pabone was responsible for managing and hiring independent contractor crews provided the contractors were able to meet Flat Rate's requirements, such as providing a worker's compensation certificate. *Id.* And in 2010, a number of alleged independent contractors began working for Flat Rate. *Id.* ¶¶ 63–67. Consistent with this, in May 2010, Djurdjevich, through his company D&M Corporation, signed a subcontractor agreement with and began performing work for Flat Rate. *Id.* ¶¶ 65, 78. While Djurdjevich concedes that D&M Corporation entered into such an agreement and received payment from Flat Rate, he denies that he was an independent contractor for the Defendant during this time. *Id.* ¶¶ 78–79.

Djurdjevich then formed Big M Delivery Corporation ("Big M") in July 2010, obtained worker's compensation insurance (naming Flat Rate as an additional insured), and entered into a subcontractor agreement with Flat Rate that allowed Big M to terminate the subcontract upon seven days' notice. *Id.* ¶¶ 1–2; 80–82. According to Plaintiffs, Flat Rate required Djurdjevich to create the corporation, and while the parties entered into a subcontractor agreement, Djurdjevich contends that he was hired as an employee rather than (as contended by Defendants) a subcontractor. *Id.* ¶¶ 1, 3.

A number of truck crew members, including opt-in Plaintiffs Dordije Bacovic and Dorde Bulut, worked with and under the general direction of Djurdjevich, and Big M did not record the working hours for the crew. *Id.* ¶¶ 11–14. Bacovic began performing services for Flat Rate in 2011. *Id.* ¶ 12. Bulut, meanwhile, became associated with Big M in 2011, but he had worked Djurdjevich in 2009 and he had previously been associated with another of Flat Rate's alleged subcontractors. *Id.* ¶ 13.

As a matter of course, Flat Rate would receive payment from the customers and would then pay Big M a weekly commission; Flat Rate contends that, as it is common industry practice for subcontractors to pay their employees from commissions earned, Big M would then use the money to pay its employees.  *Id.* ¶¶ 40–42, 86.  While Djurdjevich concedes that crew members like Bacovic and Bulut would receive a check from the owner-operators, rather than from Flat Rate directly, he alleges that Flat Rate determined the amount workers were paid for each job.  *Id.* ¶¶ 69–70.  Truck crew members would raise any issues regarding their pay with Djurdjevich; on one occasion when some of the workers complained of pay issues to a Flat Rate manager, the manager directed the workers to raise their concerns with the Plaintiff.  *Id.* ¶¶ 18–20.  If a customer had an issue with a crew member, Flat Rate would recommend to Djurdjevich that the crew member not be placed on future jobs for Flat Rate.  *Id.* ¶ 53.  There's some dispute as to the relationship between Flat Rate and the crew members: Plaintiffs deny that crew members would relate issues with particular jobs to Djurdjevich alone, instead claiming that crew members, including Bacovic and Bulut, at times reported problems directly to Flat Rate.  *Id.* ¶ 50.  Plaintiffs also disagree with Defendants' contentions that crew members were hired by, were employees of, or were paid by Big M, or that they reported to Djurdjevich alone; Plaintiffs instead allege that, at least to an extent, the workers were managed by and reported to Flat Rate and that Flat Rate provided training to crew members.  *Id.* ¶¶ 11–15, 50.  Throughout this time period, Big M employees, including Bacovic and Bulut, could, and sometimes did, at times work on moving jobs for other companies.  *Id.* ¶¶ 58–59.

Flat Rate terminated the subcontractor agreement with Big M in October 2011.  *Id.* ¶ 8.  Djurdjevich thus last performed services for Flat Rate in 2011.  *Id.* ¶¶ 8–9; *see also* Dkt. No. 101-4, Dec. 10, 2019 Djurdjevich Decl., at ¶¶ 3, 5.  In November or December 2011,

3

Djurdjevich filed for unemployment benefits. *Id.* ¶ 9. After the relationship between Flat Rate and Big M ended in 2011, Bacovic and Bulut worked for other of Flat Rate's alleged subcontractors, and they both last worked for Flat Rate sometime around late 2014 or early 2015. *Id.* ¶ 21; *see also* Dkt. No. 101-5, June 2, 2018 Bacovic Decl., at ¶¶ 2–5; Dkt. No. 101-6, June 2, 2018 Bulut Decl., at ¶¶ 2–5; Dkt. No. 98-2, Bulut Dep., at 43:12–43:17; Dkt. No. 98-3, Bacovic Dep., at 36:21–36:25; 41:13–41:20. Neither Bacovic nor Bulut knows how much he is allegedly owed in minimum wage or overtime, though both of them contend that they were underpaid and that they are owed "something." Pl.'s 56.1 Resp. ¶¶ 23–24.

Djurdjevich brought the present action on January 12, 2017. Dkt. No. 1. Defendants moved to dismiss on March 31, 2017. Dkt. No. 12. The Court then offered Djurdjevich an opportunity to amend his complaint, Dkt. No. 13, and Djurdjevich filed his first amended complaint on April 21, 2017, *see* Dkt. No. 16. Defendants then moved to dismiss the first amended complaint. Dkt. No. 19. On March 23, 2018, this Court granted in part and denied in part Defendants' motion to dismiss. Dkt. No. 29. On May 11, 2018, Djurdjevich filed the second amended complaint. Dkt. No. 33. On June 8, 2018, Djurdjevich moved for conditional class certification, Dkt. No. 40, and the Court granted the motion on November 13, 2018, *see* Dkt. No. 70. On May 3, 2019, Bacovic, Bulut, and Najdan Nikolic filed consent forms to become party plaintiffs under the FLSA, *see* Dkt. No. 90. On November 30, 2020, the Court adopted Judge Moses's recommendation to dismiss without prejudice Nikolic's claim, *see* Dkt. No. 113.

Defendants filed their motion for summary judgment on November 8, 2019. Dkt. No. 96. The motion was fully briefed on December 24, 2019, *see* Dkt. Nos. 100, 103. In their motion for summary judgment, Defendants argue that they are entitled to summary judgment as a matter of

law on the basis that Plaintiffs were not "employees" of Flat Rate under either the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, or the New York Labor Law ("NYLL"), N.Y. Labor Law § 1, *et seq.*.  Dkt. No. 99 at 8–21.  Defendants also argue that Plaintiffs' FLSA claims are time-barred in full and that the NYLL claims are time-barred in part.  *Id.* at 21–26.

Because the Court concludes that Defendants are entitled to summary judgment on the FLSA claims on the basis that those claims are time barred and because it declines to exercise supplemental jurisdiction over the state law claims, the Court need not and does not resolve the "employee" versus independent contractor issue.

## II.   LEGAL STANDARD

Summary judgment is appropriate when, after reviewing the parties' submissions in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought."  *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1223 (2d Cir. 1994).  If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that he is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). But when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). In conducting this analysis, however, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted). To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts ... and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. Plaintiffs' FLSA Claims are Time-Barred

Defendants argue that Plaintiffs' FLSA claims are time-barred in full and that there are no triable issues of fact pertaining to Plaintiffs' equitable tolling defense, and that as a result Defendants are entitled to summary judgment in their favor. *See* Dkt. No. 99 ("Def. Br.") at 21–

26. Plaintiffs, meanwhile, contend that genuine issues of material fact pertaining to their equitable tolling defense preclude summary judgment. The Court concludes that there is no genuine dispute as to any material fact that Plaintiffs' FLSA claims are time-barred.

The FLSA provides a two-year statute of limitations on actions to enforce its provisions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Djurdjevich last performed services for Flat Rate in or around October 2011, and in November or December 2011, he filed for unemployment benefits. *See* Pl.'s 56.1 Resp. ¶¶ 8–9. Bulut last performed services for Flat Rate sometime around December 31, 2014. *See* Dkt. No. 98-2, Bulut Dep., at 43:12–43:17; ; Dkt. No. 101-6, June 2, 2018 Bulut Decl., at ¶¶ 2–5. Bacovic also last performed services for Flat Rate sometime around late 2014. *See* Dkt. No. 98-3, Bacovic Dep., at 36:21–36:25; 41:13–41:20; Dkt. No. 101-5, June 2, 2018 Bacovic Decl., at ¶¶ 2–5. Defendants thus argue that all of their FLSA claims are untimely. Even under the three-year statute of limitations, Defendants contend, Djurdjevich's FLSA claims expired in October 2014—well before he brought this lawsuit, *see* Dkt. No. 1—and Bacovic and Bulut's FLSA claims expired in early 2018, well before they joined this lawsuit on May 3, 2019, *see* Dkt. No. 90. *See Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348–49 (S.D.N.Y. 2017) ("[I]n a [FLSA] collective action suit, absent tolling, the statute of limitations continues to run for each potential plaintiff until the date the individual files a consent to join the lawsuit[.]"). In their opposition to Defendants' motion for summary judgment, Plaintiffs do not dispute Defendants' arguments regarding when the statute of limitations expired; instead, Plaintiffs argue exclusively that equitable tolling renders their FLSA claims timely. *See* Dkt. No. 100 ("Pl. Opp. Br.") at 21–29.

7

Equitable tolling is "an extraordinary remedy" that should be "used only sparingly." *Upadhyay v. Sethi*, No. 10-CV-8462 (NRB), 2012 WL 3100601, at *1 (S.D.N.Y. July 31, 2012). Where a plaintiff seeks to avail herself of equitable tolling, "the burden of proving that tolling is appropriate rests on the plaintiff." *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). To determine whether equitable tolling is merited in a particular case, courts consider two factors. First, courts look at whether "a plaintiff . . . acted with reasonable diligence during the time period she seeks to have tolled." *Id.* at 512; *see also Upadhyay*, 2012 WL 3100601, at *1. Second, courts consider whether "the defendants or some 'extraordinary circumstances' prevented the plaintiff from bringing suit." *Upadhyay*, 2012 WL 3100601, at *1. *See also Trans Union LLC v. Lindor,* 393 F. App'x 786, 788–89 (2d Cir. 2010) (quoting *Walker v. Jastremski,* 430 F.3d 560, 564 (2d Cir. 2005)).

These factors are related, "as it cannot be said that an external cause prevented plaintiff from bringing her claim if her delinquency was due to her own failure to pursue her rights. . . . Conversely, if no extraordinary circumstances prevented her from bringing her claim, her failure to do so must be due to her own lack of diligence." *Upadhyay*, 2012 WL 3100601, at *1. Indeed, another way of formulating the relevant inquiry focuses the analysis on the interrelatedness of the two factors: "The relevant question when considering a request to toll is whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action, and despite all due diligence he [wa]s unable to obtain vital information bearing on the existence of his claim." *Lametta v. Florio's Enters., Inc.,* 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011) (Chin, J.) (internal citations and quotation marks omitted). In line with this, "the failure to provide an employee with the notice required by the FLSA may be a sufficient basis for tolling . . . if that failure contributed to the employee's unawareness of his rights." *Id.*

at 622–23 (internal quotation marks omitted). However, failure to disclose that an employee is entitled to overtime pay is generally not sufficient, on its own, to justify equitable tolling. *Upadhyay v. Sethi,* 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012). Accordingly, to prevail on an equitable tolling claim, a plaintiff must demonstrate that the failure to provide him with such notice contributed to his unawareness of his rights. *Id.* at 446.

Even drawing all reasonable inferences in Plaintiffs' favor, neither the facts in the record nor the case law support Plaintiffs' contention that extraordinary circumstances prevented them from diligently pursuing their claims. First, there is no merit to Plaintiffs' argument that Defendants "conceal[ed] from [Plaintiffs] their rights to minimum wage and overtime" by classifying Plaintiffs as independent contractors. *See* Pl. Opp. Br. at 24–25. Plaintiffs' argument rests on their theory that their having been classified as independent contractors rose to the level of "deception." *Id.* at 25. They cite no cases, however, to support the premise that equitable tolling is justified whenever an employee is misclassified. And indeed, to hold as much "would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime [and minimum wage]." *Patraker v. Council on the Env't of New York City,* No. 02-CV-7282 (LAK), 2003 WL 22703522, at *2 (S.D.N.Y. Nov.17, 2003); *see also Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008). Plaintiffs' argument is further undermined by the fact that they point to no facts in the record that plausibly establish any kind of deception or fraudulent concealment that would create a genuine issue of material fact, and certainly none from which a reasonable jury could find the kinds of extraordinary circumstances that equitable tolling calls for. *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986) (noting that a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."). Plaintiffs' reliance on *Yu G.*

9

*Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008), is unavailing. In *Yu G. Ke*, where the employers were found to have, among other things, attempted to intimidate or deceive the plaintiffs into signing what the court inferred was a waiver of any claims against the defendants. *Id.* at 254. Plaintiffs point to no evidence in the record to support any comparable deception or fraudulent concealment here.

Plaintiffs' second theory—that equitable tolling is justified on the basis that Defendants failed to post the required notices—fares no better. Even assuming Plaintiffs are correct that Defendants failed to post required notices required by the FLSA and the NYLL that explain wage and hour requirements, *see* Pl. Opp. Br. at 23; *see* 29 C.F.R § 516.4; N.Y. Comp. Codes R. & Regs. 12 § 142-2.8, that alone would not provide the requisite extraordinary circumstances. Some district courts in this Circuit have previously asserted that "a failure to post these notices is not by itself a sufficient basis on which to predicate equitable tolling if plaintiff was otherwise aware of her rights." *Upadhyay v. Sethi*, 2012 WL 3100601, at *5; *see also Saunders v. City of New York*, 594 F. Supp. 2d 346, 363 (S.D.N.Y. 2008) ("[A] failure to post alone does not necessitate equitable tolling."). Others have conceded that a failure to post the required notices, or to disclose an employee's rights more generally, may be a sufficient basis for tolling "only if that failure contributed to the employee's unawareness of his rights." *Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) (Chin, J.), *on reconsideration*, No. 08-CV-6181 (DC), 2011 WL 3209521 (S.D.N.Y. July 27, 2011); *see also Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2015 WL 5542919, at *8 (S.D.N.Y. Aug. 12, 2015). But there is no evidence in the record that the failure to post the required notices contributed to Plaintiffs' alleged unawareness of their rights, and Plaintiffs do not elaborate on this argument

10

beyond the conclusory (and tautological) assertion that the absence of the requisite notices contributed to their unawareness of their rights.  *See* Pl. Opp. Br. at 24–25.

Plaintiffs also attempt to argue that their immigrant status provides an extraordinary circumstance, because, according to them, their immigrant status made it "less likely" that they would "investigate legal remedies for any workplace wrongs they may have [perceived]."  Pl. Opp. Br. at 24.  The latter claim is conclusory, and Plaintiffs fail to provide any explanation as to why their immigrant status would provide the requisite extraordinary circumstance.  Moreover, even if Plaintiffs had elaborated on this point, "the law is clear that lack of education, limited financial means, and ignorance of the law are not extraordinary circumstances that justify equitable tolling."  *Hengjin Sun v. China 1221, Inc.,* No. 12-CV-7135 (RJS), 2015 WL 5542919, at *7 (S.D.N.Y. Aug. 12, 2015); *see also Ormiston v. Nelson,* 117 F.3d 69, 72 (2d Cir. 1997) ("Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of limitations.").  All told, even after considering all of Plaintiffs' arguments cumulatively and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs raise no genuine issue of material fact as to whether extraordinary circumstances existed to the extent required to justify equitable tolling, and no reasonable jury could conclude from this record that such "extraordinary circumstances" existed.

Even if Plaintiffs could point to evidence in the record that could establish the existence of extraordinary circumstances, they do not identify any genuine issues of material fact that would support the proposition that they acted with reasonable diligence.  Under the reasonable diligence prong of the equitable tolling analysis, if "a party has failed to acquire the knowledge or documents necessary to bring suit because of its own delinquency, equitable tolling is not an appropriate remedy."  *Upadhyay*, 2012 WL 3100601, at *1.  And when considering the propriety

11

of equitable tolling in a particular case, "extensive delays in filing charges serve as sufficient evidence that a party was not reasonably diligent in its efforts." *Kantor-Hopkins v. Cyberzone Health Club*, No. 06-CV-643 (DLI) (LB), 2007 WL 2687665, at *6 (E.D.N.Y. Sept. 10, 2007). *See also Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." (citation omitted)).

In their opposition to Defendants' summary judgment motion, Plaintiffs do not provide any explanation as to why they delayed *years* past their respective statutes of limitations before suing, other than repeating their conclusory allegations that extraordinary circumstances prevented them from doing so. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Nor do they provide any explanation regarding what changed between what they allege as the concealment of rights and their belated decision to bring the present lawsuit. Plaintiffs have not provided any non-conclusory basis on which to establish that they acted reasonably diligently under the circumstances, nor have they pointed to any facts in the record to even plausibly contend that they acted reasonably diligently once they learned of their rights. On the contrary, their arguments do not present any meaningful basis on which the fact-finder could conclude that Plaintiffs acted diligently. "[A] plaintiff's failure to act diligently is not a reason to invoke equitable tolling." *South v. Saab Cars USA, Inc.,* 28 F.3d 9, 12 (2d Cir. 1994); *see also Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003), *as amended* (July 29, 2003). As such, Plaintiffs have failed to create any genuine issue of material fact as to whether they acted reasonably diligently under the circumstances, and their equitable tolling claim fails for this reason as well.

Accordingly, even after drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that there are no genuine issues of material fact bearing on the question of equitable tolling. Plaintiffs' FLSA claims are time-barred in full. Defendants' motion for summary judgment on Plaintiffs' FLSA claims is GRANTED.

### B. The Court Declines Supplemental Jurisdiction Over Plaintiffs' State Law Claims

Having dismissed Plaintiffs' federal claims in their entirety, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under state law. *See Garcia v. Marc Tetro, Inc.*, No. 18-CV-10391 (VEC), 2020 WL 996481, at *3 (S.D.N.Y. Mar. 2, 2020) ("[D]istrict courts routinely decline to exercise jurisdiction over related state claims once summary judgment is granted for the defendant on all of the federal claims."); *see also Buti v. Perosa, S.R.L.*, 139 F.3d 98, 107 (2d Cir. 1998) (affirming district court's decision to decline supplemental jurisdiction after granting summary judgment); *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) ("Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's [state law] claims after dismissing all federal claims." (collecting cases)); *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 310 (E.D.N.Y. 2014) (declining to exercise supplemental jurisdiction over the state law claims after dismissing FLSA claims); *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 818 F. Supp. 2d 564, 571 (E.D.N.Y. 2011) (declining supplemental jurisdiction after granting summary judgment as to federal claims).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. This resolves Dkt. No. 96. The Clerk of Court is respectfully directed to terminate all pending motions, enter judgment, and to close the case.

SO ORDERED.

Dated: November 30, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge